## OTTER *vs.* THE BREVOORT PETROLEUM COMPANY.

An agreement, by an incorporated company, to sell shares of its own stock for less than par, is valid on the face of it, binding the company to deliver the stock.

Where it does not appear how the company acquired the stock—whether it was issued for property and acquired subsequently by the company, or was stock forfeited for the non-payment of the subscription price—it cannot be inferred, in favor of the company, that the stock had not been fully paid up and afterwards acquired by the company.

And if it were otherwise, there is no rule of public policy that requires the court to relieve a company from a contract otherwise without objection, binding it to the delivery of shares of its capital stock, for a price below the par value.

An agreement signed by an officer of a corporation, in its behalf, for the sale of its stock, under a mistake as to the fact of a sale of such stock having been made to the purchaser, by another officer of the corporation—such mistake occurring in consequence of the erroneous statement of the purchaser—is not binding on the corporation.

A judgment for money damages, against a corporation for failing to deliver shares of its stock, pursuant to agreement, cannot be claimed on the ground that the corporation, having issued certificates for such shares to another, has rendered itself incapable of specifically performing the contract, where there is no proof that the corporation has not other shares, for which it could lawfully issue certificates to the plaintiff, if it were under an obligation to do so.

APPEAL from a judgment entered upon the report of a referee. The complaint alleged that the defendants, on or about the 23d day of August, 1864, at the city of New York, contracted and agreed to and with the plaintiff, for and in consideration of the sum of seventeen hundred and fifty dollars, then and there paid by the plaintiff to the defendants, to sell and deliver to the said plaintiff seven hundred shares of the capital stock of "The Brevoort Petroleum Company," the said defendants, and that simultaneously with the making of said contract, and in furtherance and confirmation thereof, the defendants, by their lawfully authorized agent, George H. White, their president, executed and delivered to the plaintiff an instrument in

writing by which they acknowledged the receipt of the $1750, in full for said shares ; said instrument or receipt specifying that it was to be exchanged for certificates of stock, on presentation to the secretary.

That at various times since the said 23d day of August, 1864, and before the commencement of this action, the plaintiff duly presented the said instrument, called a receipt, to the secretary of said defendants, and demanded certificates of stock of said defendants, pursuant to the terms and conditions thereof, but that said defendants would deliver to the plaintiff but five hundred shares of said capital stock, which were duly delivered to, and received by the plaintiff, on account of said contract or agreement, on the 16th day of January, 1865, and the plaintiff thereupon, at the request of said defendants, signed a receipt, indorsed upon said contract by said defendants, by which he acknowledged the receipt thereon of five hundred shares on account.

That the defendants had wrongfully neglected, and refused, and still do wrongfully neglect and refuse, to deliver to the plaintiff the remaining two hundred shares of said capital stock, and that the plaintiff had sustained damage thereby to the extent of fifteen thousand dollars. Wherefore, the plaintiff prayed that this court would order and adjudge that said defendants do forthwith deliver the said two hundred shares of their capital stock to him, and if said defendants should be unable to deliver the same, that the plaintiff might have judgment against the defendants for the value thereof, and the damages sustained by him on account of such neglect and refusal, to the amount of fifteen thousand dollars, besides the costs.

The defendants by their answer denied the allegations of the complaint, and alleged that the defendants did not, on or about the 23d day of August, 1864, or at any other time, contract or agree to and with the plaintiff, to sell and deliver to him seven hundred shares of the capital stock of the de-

Otter *v.* Brevoort Petroleum Company.

fendants. That on or about the day and year last aforesaid, the plaintiff having (previously, and on or about the 9th of August, 1864,) verbally agreed with George H. White to purchase five hundred shares of the capital stock of the defendants at the rate and for the price of two dollars and fifty cents per share, paid the said George H. White the consideration money therefor, and subsequently received the scrip or certificate therefor, which is the same five hundred shares of such capital stock stated by the plaintiff in the complaint to have been received by him. That simultaneously with such payment the plaintiff informed said George H. White that he, the plaintiff, had also agreed with one William H. Lee, then and still a director of the defendants, to purchase two hundred additional shares of the capital stock of the defendants. That the said George H. White, fully believing and relying on such allegation of the plaintiff, in consideration thereof, received the money, and gave the receipt therefor stated in the complaint. And the defendants further alleged, on information and belief, that the plaintiff had not agreed with said William H. Lee to purchase such two hundred additional shares of such capital stock, and that the plaintiff was not, and is not entitled to receive such additional two hundred shares of such capital stock, or any part thereof. That on or about or prior to the 16th day of January, 1865, the defendant delivered to the plaintiff five hundred shares of such capital stock, in fulfillment of all liability to the plaintiff, and of all contracts or agreements with him for stock, and not on account of any alleged contract or agreement stated or alleged in the complaint, and that if the plaintiff signed any such receipt therefor, as is alleged in the complaint, he did so of his own motion, and not in pursuance of any request of the defendants, as alleged by the plaintiff. And the defendants denied that they had ever wrongfully neglected or refused to deliver to the plaintiff two hundred or any other number of shares

of the capital stock of the defendants, or that the plaintiff, by any alleged refusal, neglect, or wrong doing of the defendants, has sustained damage to the extent of fifteen thousand dollars, or to any other amount.

The referee found the following facts :

*First.* That the defendants are a corporation duly incorporated under the act of the legislature of the state of New York, entitled, " Of Corporations for Manufacturing, Mining, Mechanical, or Chemical Purposes," and the various acts amendatory thereof.

*Second.* That by a resolution of the board of trustees of the said defendants, passed on the second day of August, 1864, one George H. White, who was at that time, and at the times hereinafter mentioned, the president of the said defendants, and a member of the said board of trustees, and one William H. Lee, who was also at that time, and at the times hereinafter mentioned, a member of the board of trustees, were authorized and empowered to sell the balance of the first four thousand shares of the capital stock of the said defendants remaining unsold.

*Third.* That on the 23d day of August, 1864, at the city of New York, the said George H. White, acting under the resolution aforesaid, sold to the plaintiff, on behalf of the defendants, seven hundred shares of the said capital stock of the said defendants, at the rate or price of $2.50 per share, and then and there received from the plaintiff the sum of $1750, in payment thereof.

*Fourth.* That the said White, subsequently paid the sum of $1750 to the defendants.

*Fifth.* That the said White, on the said 23d of August, 1864, executed and delivered to the said plaintiff a receipt in the words and figures following, to wit :

" Rec'd, New York, August 23rd, 1864, of John M. Otter, seventeen hundred and fifty dollars in full for seven hundred shares of the capital stock of ' The Brevoort Petroleum Co.'

Otter *v.* Brevoort Pretroleum Company.

this receipt to be exchanged for certificates of stock on presentation to the sec., D. G. Schofield.

$1750.        GEO. H. WHITE,

For J. G. WILLIAMS, *Treas."*

*Sixth.* That subsequent to the second day of August, 1864, and prior to the said 23d day of August, 1864, the plaintiff had agreed with the said White, to take or purchase five hundred shares of the said capital stock, at the price or sum of $2.50 per share.

*Seventh.* That subsequent to the second day of August, 1864, and prior to the said 23d day of August, 1864, the plaintiff had agreed with the said Lee, to take or purchase two hundred shares of the said capital stock, at the rate or price of $2.50 per share.

*Eighth.* That the seven hundred shares so sold by the said White to the plaintiff, and mentioned in the receipt hereinbefore referred to, were the same shares mentioned in the sixth and seventh findings of fact.

*Ninth.* That the defendants had delivered to the plaintiff five hundred of the seven hundred shares of stock so sold to him as aforesaid, but had neglected and refused to deliver to him the remaining two hundred shares thereof, although the same had been demanded of them, and the said receipt presented to their secretary by the plaintiff, prior to the commencement of this action.

*Tenth.* That the highest market value of the said capital stock of the defendants, since the sale of the same to the plaintiff, on the 23d day of August, 1864, was the sum of $36 per share.

*Eleventh.* That the value of the said two hundred shares of the capital stock, remaining undelivered to the plaintiff, at the price of $36 per share, was the sum of $7200, and that the difference between that sum and the sum of $500, the price paid for the same by the plaintiff, at the rate of $2.50 per share, was the sum of $6700.

*Twelfth.* That the plaintiff duly presented the receipt aforesaid to the secretary of the said company, and demanded the delivery of the said two hundred shares of stock to him, by the defendants, on the 16th day of January, 1865.

*Thirteenth.* That the interest on the said sum of $6700, from the 16th day of January, 1865, to the date of the report, was $248.64.

*Fourteenth.* That the plaintiff had sustained damages in the sum of $6948.64, being the amount of the value of said stock as aforesaid, with interest from the said 16th day of January, 1865, by reason of the failure of said defendants to deliver to him the said two hundred shares of said capital stock.

And the referee reported as a conclusion of law, on the foregoing facts : That the plaintiff was entitled to judgment against the said defendants for the sum of $6948.64, besides the costs and disbursements of this action.

*D. McMahon,* for the appellants. I. The verbal subscriptions were not contracts between the plaintiff and defendants.

II. The written receipt was not a contract between the parties. 1. It was not a contract at all, but a mere receipt by George H. White for the treasurer. 2. It does not purport to be a contract on behalf of the defendants. The defendants are not a party to it. 3. It was not executed by authority of the trustees, who alone had power to contract on behalf of the defendants. (*Laws of* 1848, *p.* 55, § 3.) 4. The trustees not only did not authorize such receipt, but refused to confirm the (verbal) subscription for stock by the plaintiff. (*Moss* v. *Livingston,* 4 *N. Y. Rep.* 208. *Dewitt* v. *Walton,* 9 *id.* 571.)

III. The subscription for the stock for less than the par value thereof, and any contract founded on such subscription is void. 1. The whole amount subscribed must be paid by the stockholder, (*Laws of* 1848, *p.* 56, §§ 6, 7,) and a failure to do so within two years, works a forfeiture of the

charter. (*Id.*) 2. Until such payment in full, and a sworn certificate thereof is filed and recorded, the stockholders are individually liable. (*Id.* §§ 10 and 11.) 3. An issue of the stock for one quarter of its amount is a fraud on the laws, and the plaintiff is a party to it. 4. Such a contract as is alleged, is contrary to the policy of the law, and will not be sustained. (*Payne* v. *Eden,* 3 *Caines,* 213. *N. Y. Firemen's Ins. Co.* v. *Ely,* 2 *Cowen,* 679. *Life and Fire Ins. Co.* v. *Mech. Ins. Co.,* 7 *Wend.* 31. *Perkins* v. *Savage,* 15 *id.* 412. *Jackson* v. *Walker,* 5 *Hill,* 27 ; 7 *id.* 387.)

IV. The plaintiff (if he had any valid claim) had his election to rescind the contract for a breach, and bring an action at law for damages, *or to proceed in equity to compel a transfer of the stock.* He made that election, and claimed the stock specifically, and cannot make a new election and recover enormous damages. (*See Boyd* v. *Vanderkemp,* 1 *Barb. Ch.* 273.) It was monstrous to permit a new election every time one party found it to his interest ; and the referee had no right to make such new election for him, and give him very much more, and an entirely different remedy from what was claimed by the pleadings. The bill is one for specific performance only. The damages claimed are for detention of the stock. Yet, without a trial by jury, the referee ignored the right the defendants had to a trial by jury in an action, if treated as breach of covenant.

V. The rule of damages adopted by the referee was erroneous. The action being in its essence one for a specific performance, his legal damages were *loss of dividends* or *interest on the amount paid,* viz. $2.50 per share on 200 shares, the number claimed *and the amount paid.* Without any proof of what the value was at the time of the breach of the alleged contract and interest on that value, a rule adopted in one case (*see Brinckerhoff* v. *Phelps,* 43 *Barb.* 469,) and without any proof of what the market value was at the time and place of delivery, less amount paid (a rule adopted in *Dana* v. *Fiedler,* 12 *N. Y. Rep.* 40,) and without any proof

of the value of the stock at the time of filing the bill, after deducting unpaid purchase money—a rule adopted in *Boyd* v. *Vanderkemp,* (1 *Barb. Ch.* 273,) and without any proof of the difference in value between cost price and market value at time the of demand—a rule adopted in 7 *Bosw.* 515, and 6 *Barb.* 646—the referee allowed the highest market value between the day of breach and the day of trial, and on the most general and unsatisfactory proof, even of that kind, gives the extraordinary judgment of nearly $7000—for what cost only $500. The rule of allowing the highest market value between breach and day of trial is confined to special cases, and is reprobated in *Suydam* v. *Jenkins,* (3 *Sandf.* 614.) In the plaintiff's complaint no special damages are averred. The allegation in that particular is of a round sum. No such damages as the referee allowed are necessarily implied from the breach of this alleged contract. On the contrary, repayment of the sum advanced, and interest, would be the legitimate fruits of the injury. If the plaintiff sought particular or special damages he must have alleged them. Contingent profits which might have been realized from the fulfillment of a contract are not recoverable as damages for its breach. (*Driggs* v. *Dwight,* 17 *Wend.* 71. 4 *Barb.* 261. *Peters* v. *Whitney,* 23 *id.* 24. *Hargous* v. *Ablon,* 5 *Hill,* 472.)

*R. W. Van Pelt,* for the respondent. I. The receipt, is evidence of the contract between the plaintiff and defendants. It was delivered to the plaintiff on his paying the $1750 therein mentioned for the 700 shares of the capital stock of the defendants. The president of the company had the power to make the contract. (*Lohman* v. *Erie R. R. Co.,* 2 *Sandf.* 39.)

II. If the issuing of stock by the defendants for less than its par value was illegal, it is not competent for the defendants to set up such a defense. (*Moss* v. *McCullough,* 7 *Barb.* 279.)

III. The defendants claimed that they were not bound to deliver the stock to the plaintiff for the reason that they

had already delivered it to Wm. H. Lee who was entitled to recover it under the contract. Under the Code the plaintiff is entitled to assert his claim for damages, in an action for specific performance. (*Clarke* v. *Rochester, &c. Railroad Co.,* 18 *Barb.* 350.)

IV. Where a party had put it out of his power to perform a contract, the court of chancery had power either to award an issue for the damages to be assessed by a jury or to order a reference to a master to compute the amount. (*Woodcock* v. *Bennet,* 1 *Cowen,* 727, 755.) *Parkhurst* v. *Van Cortlandt,* 1 *John. Ch.* 273.)

V. The measure of damages upon the breach of a contract by a corporation to deliver shares of its stock to a subscriber, is the market value of the stock at the time it was demanded. (3 *Hill,* 593. 12 *N. Y. Rep.* 41. *Van Allen* v. *Illinois Central R. R. Co.,* 7 *Bosw.* 515. *Crist* v. *Armour,* 34 *Barb.* 378.) The plaintiff is entitled to recover the highest market value of the stock. (*Romaine* v. *Van Allen,* 26 *N. Y. Rep.* 311.)

*By the Court,* LEONARD, P. J.   The defendants authorized Geo. H. White, their president, and Wm. H. Lee, a trustee, to sell 4000 shares of the stock of the company for $2.50 per share ; the par value being $10. White received from the plaintiff $1750 on the 23d of August, 1864, and signed a receipt for that sum from the plaintiff "in full for 700 shares of the capital stock" of the company ; the receipt to be exchanged for certificates of stock, on presentation to the secretary. White signed the receipt "for J. G. Williams, treasurer."

This is a valid contract, on the face of it, binding the company to deliver the stock for which the plaintiff's money was received. It is said that public policy will not permit an incorporated company to sell its own shares for less than par. The facts are not before the court to raise the question mentioned. It has not been made to appear how the com-

pany acquired the stock. It may have been issued for property, and acquired subsequently by the company. Or it may have been forfeited stock for the non-payment of the subscription price. It cannot be inferred, in favor of the defendants, that the stock had not been fully paid up and afterwards acquired by the company. If it were otherwise, I am unable to perceive any rule of public policy that requires the court to relieve the defendants from a contract otherwise without objection, binding it to the delivery of shares in its capital for a price below the par value.

The contest in this case relates to the non-delivery of 200 shares, a portion of the number mentioned in the contract. The company delivered to the plaintiff certificates for 500 shares, admitting the validity of the contract only to that extent. When the receipt was signed by the president of the company, the plaintiff stated that he had agreed with Mr. Lee to take 200 shares from him (Lee) in addition to the 500, which had agreed before that time verbally with the president to take and pay for at the price named. He stated to White that Lee had agreed that he should have 200 shares of the stock which the company were offering to dispose of through the agency of White and Lee. It appeared that Lee was absent from the city of New York, when the business was transacted, and White, relying upon the truth of this statement, received the money of the plaintiff and signed the obligation of August 23, binding the company to deliver the additional 200 shares claimed by the plaintiff. Lee was a witness on the trial, as well as the plaintiff, and testified that he had not made any agreement to sell the 200 shares to the plaintiff. Upon his return, he had informed the officers of the company that he had not made any such agreement as had been claimed by the plaintiff, and insisted that the shares so claimed had been taken by and belonged to him, the said Lee. The defendants accepted his version of the matter, and issued the shares in controversy to Mr. Lee. It is quite clear, from an examination of the evidence,

that there was no valid contract between Lee, (either in his individual capacity, or acting as the trustee and agent of the company,) and the plaintiff for the purchase or sale of the shares in question. There was no contract in writing signed by the parties, or either of them, and nothing paid or received on account. As between Lee and the plaintiff the contract was *nudum pactum* and in no way obligatory upon either party. The statement made by the plaintiff to White, upon which he procured the contract for the additional 200 shares, was without foundation, and ought not to have been made. It may be that there had been a conversation between Lee and the plaintiff to the effect stated by the plaintiff, and the plaintiff may not have intended a fraud upon any one, but that does not strengthen the case on his part, although it may have the effect of relieving him from the charge of misrepresentation with a fraudulent intent. The agreement was signed by White under a mistake, at least, as to the fact of a sale made by Lee ; and that mistake occurred by the erroneous statement of the plaintiff. The contract, for that reason, was not binding upon the company, so far as it related to the 200 shares. The defendants were willing to rescind it, and tendered to the plaintiff the money received from him, but he declined it.

The judgment rendered is for $6948.64 damages for the non-delivery of the 200 shares at the highest market rate between the time when the plaintiff demanded certificates therefor, and the day of trial, waiving the specific delivery of the shares. This judgment for money damages instead of the shares, is claimed by the plaintiff upon the ground that the defendants, having issued certificates for the said shares to Lee, had rendered themselves incapable of specifically performing the contract by delivering the shares to the plaintiff. The rule stated is correct, but the fact has not been shown to exist, as claimed. There is no proof that the defendants had not other shares, for which they could

lawfully issue certificates to the plaintiff if they were under an obligation so to do.

In my opinion the judgment should be reversed, and a new trial be had before the same referee, with costs to abide the event.

[NEW YORK GENERAL TERM, November 4, 1867. *Leonard, Sutherland* and *Peckham,* Justices.]