GILBERT H. CRAWFORD, as Sole Permanent Receiver of ROLAND STEEL COMPANY, INC., Plaintiff, *v.* RUDOLF ERBSLOH, Defendant.

Supreme Court, Putnam County, September 5, 1930.

*Harold E. Lippincott*, for the plaintiff.

*Curtis, Mallet-Prevost, Colt & Mosle*, for the defendant.

TOMPKINS, J.    This is an action by the permanent receiver of the Roland Steel Company, Inc., to recover a balance of $5,000 alleged to be due and owing on defendant's subscription for 100 shares of eight per cent preferred stock in that corporation of the par value of $100 each.

When the Roland Steel Company was incorporated in 1921, it had an authorized capital of $25,000, consisting of 250 shares of common stock having a par value of $100 per share.   In December, 1924, the authorized capital was increased to $300,000 by increasing its common stock to 10,000 shares, and authorizing the issuance of 2,000 shares of preferred stock, the par value of both classes being $25 per share.   When in January, 1925, the capital stock was reclassified into 1,000 shares of eight per cent cumulative preferred stock and 3,000 shares of common, each with a par value of $100,

the defendant Erbsloh purchased 50 shares of preferred stock of this issue for $5,000, and received a bonus of an equal number of common shares, and received quarterly dividends thereon.

In November, 1925, the directors authorized the increase and reclassification of the capital stock to $1,000,000, consisting of 10,000 preferred shares, having a par value of $100, and 45,000 common shares, without par value. The former stockholders were given the privilege of exchanging their old preferred certificates, one for one, for the new preferred stock, and receive a bonus of two shares of new common stock for each share of new preferred issued. The defendant took advantage of this offer and exchanged his stock.

On November 16, 1925, the defendant signed a stock subscription for 100 additional shares of the new preferred stock by a writing as follows:

" I hereby subscribe to 100 shares of eight per cent cumulative preferred stock in the Roland Steel Company, Inc. at One hundred ($100) dollars (par) per share and herewith hand you my check of five thousand in part payment of same.

" It is understood that a bonus of two shares of common stock will be issued to me with each share of preferred stock."

On the same day the Roland Steel Company, Inc., by R. Bergman, vice-president, wrote the defendant as follows:

" We herewith acknowledge with thanks your subscription for additional one hundred (100) shares of preferred stock in the Roland Steel Company carrying a bonus of two hundred (200) shares of common stock as per special offer made to stockholders of record.

" We herewith acknowledge receipt of your check of $5000 in part payment for same. It is understood that should you find it necessary to cancel the unpaid balance of this subscription, that you are privileged to do so."

The proof shows that there was no cancellation by the defendant of the balance of this stock subscription prior to the bringing of this action.

On May 20, 1926, the defendant became a member of the board of directors and remained and served in that capacity until he resigned on December 16, 1926.

It also appears that the indebtedness of the defendant, R. Erbsloh, for the balance of the stock subscription, in amount $5,000, appeared on the books of the corporation as an asset, and that his subscription was recorded in the company's books as being for $10,000 of preferred stock.

This action is brought by the permanent receiver for the sum of $5,000 balance alleged to be due on this stock subscription.

The plaintiff contends:

1. That collateral agreements of release are invalid and cannot be asserted against a receiver representing creditors of a corporation.

2. The liabilities of the Roland Steel Company, Inc., now in receivership, exceed the assets.

3. The subscription (plaintiff's Exhibit 7) signed by defendant constitutes a valid and indivisible contract, and was unconditional.

4. That a demand was made on defendant for payment of the balance of $5,000.

5. That defendant's position as a director of the corporation estops him to deny the validity of his subscription.

The defendant, on the other hand, contends:

1. That the subscription for stock and the letter of the corporation signed by the vice-president permitting a cancellation of the unpaid balance, if the defendant finds it necessary, are contemporaneous writings and acts which constitute the subscription agreement between the parties and that, in so far as the same remains unperformed, it is void.

2. The defendant is not liable upon the remainder of his stock subscription, for more than his *pro rata* share of the debts of the company, and there was no competent proof that the company's liabilities exceed its assets.

3. The unexecuted portion of defendant's subscription agreement is invalid as calling for a gratuitous subscription to common stock.

I think the plaintiff should recover. Plaintiff's Exhibit 7, the stock subscription, is a contract complete on its face. That exhibit shows that the defendant subscribed to 100 additional shares of eight per cent cumulative preferred stock, and gave his check for $5,000 in part payment. The letter signed by Bergman, the vice-president, acknowledging receipt of the subscription for 100 additional shares of stock and the check of $5,000, was not a part of the contract, and the statement of the vice-president, R. Bergman, in that letter, giving the defendant Erbsloh the privilege to cancel the unpaid balance " should you find it necessary " was a subsequent act on the part of the vice-president after the making of the contract and unauthorized.

There was apparently no consideration for this extension of this privilege by the vice-president to the defendant. Even had it been valid and a part of the contract, the option to cancel the subscription for the balance of the stock was never exercised by the defendant prior to the appointment of the joint temporary receivers for the corporation on January 15, 1927. The defendant first attempted to exercise this alleged option at the time of the service of his answer in the present action, four years after the said stock subscription was made.

The accounts of the joint temporary receivers of the corporation which were approved by a court decree, show a deficit of $9,968.60, and proof offered at the trial was in substance that, since the final account, proofs of claim have been filed with the permanent receiver aggregating $150,000 and that the assets liquidated to date were $7,000; the liabilities, therefore, exceeding the assets.

I think that a demand on the defendant for payment of the balance of $5,000, though not necessary to have been made, was sufficiently proven. The witness Avery testified to the mailing of a formal demand to the defendant at 30 Church street, the address of defendant given to the said witness, which demand was never returned to plaintiff by the post office authorities. The defendant's office formerly was at 30 Church street, and later 30 Broad street. The defendant testified that mail sent to his former 30 Church street address was subsequently forwarded to him. I think the presumption created by proof of the proper mailing, and the non-return of the demand, is sufficient to warrant the court in finding that demand was made for payment of the $5,000 balance.

Under the rule laid down in *Armstrong* v. *Danahy* (75 Hun, 405) it was held that where a court orders a receiver to collect the outstanding assets of a company, the receiver is justified in bringing an action without previous demand for the payment of the subscription.

The defendant's contention that, if liable at all, he is liable merely for his *pro rata* share of the debts of the company, is untenable. The action is on contract to recover the unpaid subscription. As was said in *Mills* v. *Friedman* (111 Misc. 253, 259): " It seems to be well settled that such an action as the one at bar may be brought on the subscription agreements, in the right of the corporation by the trustee in bankruptcy, that the stockholder is primarily liable on his contract *for the full* amount he agreed to pay, and that as the Bankruptcy Court has directed the trustee to issue a call or demand therefor, the propriety or validity of this order of a court of competent jurisdiction, cannot be questioned collaterally." (See, also, *Myers* v. *Sturgis*, 123 App. Div. 470; *Jeffery* v. *Selwyn*, 220 N. Y. 77.)

It is equitable that the defendant, having subscribed for 100 shares and paid for 50 shares, and the balance of $5,000 having been carried on the books of this corporation as an asset to be paid, and the court having ordered the permanent receiver to proceed and collect the assets, and the defendant never having availed himself of his option to cancel the unpaid subscription — even if he had a legal right to do so — he should not now be permitted to do so. The defendant's argument that the $5,000 paid on

November 16, 1925, was not paid *on account* of the subscription of 100 shares of new preferred stock is contrary to the wording of the subscription agreement signed by the defendant himself.

As to the validity of a stock subscription giving a bonus of common stock, it is apparent from the evidence that the common stock distributed as such bonus was originally issued for a valuable consideration, having originally been a part of the Shack interests. Also, under the ruling of *Jeffery* v. *Selwyn* (220 N. Y. 77), the defendant is estopped from raising any question as to the legality of his stock subscription, inasmuch as sound public policy and the plain rules of good faith dictate that he cannot avoid liability on his subscription upon that ground, inasmuch as he received dividends on the stock for which he paid, and was a director of the corporation.

There is a presumption that the corporation complied with the law in issuing its stock, and this presumption was not overcome by any proof presented by the defendant. (*Otter* v. *Brevoort Petroleum Company*, 50 Barb. 247; *Skillin* v. *Magnus*, 162 Fed. 689.)

Upon the whole case, the plaintiff is entitled to judgment against the defendant for the sum of $5,000, with interest and costs.