## MANN *against* COOKE.

A rail-road company, being incorporated, by the legislature of the state of *New-York,* its charter authorized the directors to require payment of subscriptions to the capital stock, under the penalty of the forfeiture of the shares, with the payments made thereon. This company was duly organized under its charter, its original capital fully subscribed, and ten *per cent.* thereof paid in. Afterwards authority was given to increase the capital stock. Soon after the original stock was taken up, *M* purchased 11,265 shares of it, and then became insolvent, and unable to pay the unpaid balance which would be due to the company on its calls. He thereupon transferred these shares to *D*, in trust for the company, so as to be reinvested therein ; and the company immediately received new subscriptions to the same amount. Among the new subscribers was *C*, who subscribed for forty shares. This subscription was made upon a condition that all future calls should be paid as required, or the shares should become the property of the company, and be sold for its benefit. *D* thereupon made a transfer, on the books of the company, of forty shares, to *C*, who received a certificate of ownership from the president. The special terms of *C's* subscription were not known to the other subscribers; all whose subscriptions were made without any such condition. Some time afterwards, the company being largely indebted and insolvent, and the greater part of the instalments on its stock unpaid, the president made an arrangement with *C* to this effect; that *C* should immediately pay the instalments on twenty shares of his stock in full ; and he was thereupon to be discharged from all liability on the other twenty shares. *C* complied with these terms ; and the money so paid was applied for the benefit of the company. *A* was appointed, under the laws of the state of *New-York,* where the parties then lived, and all the transactions took place, a receiver of the effects of the company, which were duly assigned to him. On a bill in chancery brought in this state by *A*, against the executrix of *C*, to obtain payment of the balance due on the forty shares subscribed by him, it was held, 1. that the provision in the charter for a forfeiture of stock, on non-payment of instalments, was merely an accumulative remedy, and did not supersede or impair any

remedy otherwise existing ; 2. that in this case, a subscription for shares of the capital stock, incurred a debt, which may be enforced, by any appropriate common law or equitable remedy ; 3. that the subscription of *C* for forty shares, though peculiar in its terms, and made under peculiar circumstances, was not different in its legal effect from the other subscriptions ; 4. that this corporation, created as it was for public purposes, could not receive a subscription, under a private arrangement, at less than the par value of the stock, as this would take from the company so much of its available means, and would thus operate as a fraud upon creditors and other stockholders; 5. that consequently, the arrangement made between the president of the company and *C,* by which *C* was to be discharged from the payment of further calls on twenty shares of the stock subscribed by him, was unavailing, as against the receiver, representing the creditors ; 6. that consequently, the plaintiff was entitled to a decree for the unpaid balance due on the forty shares subscribed by *C,* with interest thereon.

These doctrines have been established, under similar circumstances, in the state of *New-York.*

*Hartford,*
July, 1850.

Mann
*v.*
Cooke.

THIS was a bill in chancery, brought by *John T. Mann,* receiver of the *Canajoharie and Catskill Rail-road Company,* against *Annie E. Cooke,* executrix of the last will and testament of *Edward P. Cooke,* deceased ; praying for a decree ordering her to pay to the plaintiff the amount remaining due and unpaid upon forty shares of the stock of said company, held by said *E. P. Cooke,* in his life-time, but now belonging to his estate.

The original charter of this company, was granted, by the legislature of the state of *New-York, April* 19th, 1830. It provided, that the capital stock of the company should be 600,000 dollars, and should be divided into shares of 50 dollars each, which should be deemed personal estate, and transferable in such manner as the by-laws of the corporation should direct. It provided also for the election of directors, five of whom should form a board, and that they should choose one out of their number to be president. In a subsequent section, it was declared to be lawful for the directors to require payment of the sums to be subscribed to the capital stock, at such times, and in such proportions, and on such conditions, as they should deem fit, under the penalty of the forfeiture of all previous payments thereon. By an amendment of the charter, passed *April* 29th, 1837, the company was authorized to increase its capital stock 400,000 dollars ; and the directors were invested with all the powers in respect to the instalments that might be required in the filling up of the additional stock, which they possessed by the charter, in

reference to the original stock ; and particularly, they were authorized to require payment of the sums to be subscribed to the additional stock, as well as to the original stock, at such times, and in such proportions, and on such conditions, as they should see fit, under the penalty of the forfeiture of their stock and of previous payments thereon.    By a general statute law of the state of *New-York*, regarding corporations, it was provided, that if there should be any sum remaining due upon any share of stock subscribed in such corporation, the receivers should immediately proceed and recover the same, unless the person so indebted should be wholly insolvent ; and for that purpose, might file their bill in the court of chancery, or commence and prosecute an action at law, for the recovery of such sums, without the consent of any creditors of such corporation.

By legal proceedings had against the *Canajoharie and Catskill Rail-road Company*, the stock, property and effects of that company were sequestered, and the plaintiff was duly appointed receiver thereof.

The original stock was taken up and subscribed for according to the terms and provisions of the charter, and without any other qualification than such as it contained.

After such stock was so taken up, and the company organized, *viz.* on the 3d day of *July*, 1835, *Henry Marvin* purchased 4,400 shares, and *Rodman G. Day* 7,245 shares; but finding themselves unable to pay the balance remaining unpaid upon such shares, they sold and transferred the greater part of them, *viz.* 7,215 shares, to *Amos Cornwall, Peter S. Mesick* and *John M. Donelly* ; the vendors retaining the balance.    While the shares sold to these persons stood in their names on the books of the company, sundry persons subscribed to the stock of the company the number of shares set to their respective names, to an amount in the whole equal to the number of shares so transferred to *Cornwall, Mesick* and *Donelly* ; and among these subscribers was *Edward P. Cooke* of the city of *New-York*, for forty shares.    His subscription was obtained, by *Thomas B. Cooke*, then president of the company, in consequence of an application previously made to him, by the subscriber, to procure stock in that company, and was in the following form :

" *Canajoharie and Catskill Rail-road.*    The shares are

fifty dollars each.—The undersigned agree to pay, on the first day of *May* next, to the president and directors of the above company, twelve $\frac{50}{100}$ dollars on each and every share annexed to their respective names, when said shares are to be transferred to each subscriber to this instrument, but on condition that all future calls legally made by said board of directors shall be paid as required, or said shares shall become the property of the company, and the president and directors shall sell the same for the benefit thereof.

*New-York, August* 13th, 1835.

[Signed.] *Edward P. Cooke,* forty shares."

The other subscriptions were made without any such condition.

*E. P. Cooke* paid the instalments called for on the stock subscribed by him, amounting to 500 dollars, after which the shares were transferred on the books of the company, from *Cornwall, Mesick* and *Donelly* to him; a condition similar to that on which his subscription was made, being annexed to their transfer to him. A certificate of his ownership of the forty shares, containing the same condition, was thereupon issued to him, which he received and retained.

The stock transferred by *Marvin* and *Day* to *Cornwall, Mesick* and *Donelly,* was holden by the latter in trust for the company, although it stood on the books in their names, as individuals, and not as trustees. (*a*)

After the transfer to *E. P. Cooke,* sundry other instalments were called for; and on the 24th of *March* 1841, the company being greatly insolvent, he, being abundantly responsible, paid to *Thomas B. Cooke,* then president of the company, the sum of 500 dollars, and received from him a writing of the following tenor:

" Received from *Edward P. Cooke,* this 24th day of *March* 1841, five hundred dollars, which sum, in addition to the sum of five hundred dollars heretofore received by the *Canajoharie and Catskill Rail-road Company,* completes a payment of fifty dollars on each share of twenty shares of the capital stock of said company, *viz.* full payment thereon, part being in advance of calls. In consideration of the foregoing payments, and of the further sum of one dollar, the receipt of

(*a*) The finding of the court states the evidence proving this fact.

which is hereby acknowledged, the said *Cooke* is hereby declared to be entitled to a certificate of twenty shares of the capital stock of said company, to be delivered to him, on demand, executed in due form ; and the said *Cooke* is hereby released and discharged from all liabilities or demand whatever, growing out of his subscription for forty shares of the stock of said company, which subscription is now cancelled and compromised.          *Thomas B. Cooke*, President.

*New-York, March* 24th, 1841."

It did not appear by the books of the company, that *Thomas B. Cooke* had any legal authority in behalf of the company, or the directors, to enter into any such arrangement as that here stated, or that there was any subsequent ratification thereof, by the company or the directors. But previous to this arrangement, he, by the advice of the directors residing in *Catskill,* and with general parol instructions from them, went to the city of *New-York,* during a time of great pressure in the money market, for the purpose of raising money to pay an instalment of interest due to the state of *New-York* upon a loan made to the company. The sum of 500 dollars thus paid to him, by *E. P. Cooke,* was by him applied, in the accomplishment of this purpose.

The stockholders of the company generally, had no knowledge of the special terms of *E. P. Cooke's* subscription. The company, at that time was, and still is, largely insolvent. Sundry of the stockholders have been compelled to pay, and have paid in full, all the instalments on the stock by them held. Instalments have been regularly called upon the stock subscribed for by *E. P. Cooke,* but nothing has been paid, except as before stated. The debts now outstanding against the company, were contracted after he became a stockholder. The whole transaction took place in the state of *New-York,* and the parties were citizens of that state.

The case, embracing these facts, with some others, either incidental, or of minor importance, was reserved for the advice of this court, upon the question whether the plaintiff is entitled to any, and if any, what relief.

*Hungerford* and *Cone,* for the plaintiff, contended, 1. That the charter of the company is to be taken in connexion with the law of the state, at the time of its incorporation, which in

effect becomes a part of its charter. 2 *Robin. (Lou.) R.* 529.

2. That if necessary for the payment of the debts of the company, the stockholders may be required to pay their stock in full, notwithstanding a forfeiture of stock is authorized by the charter. *Hartford and New Haven Rail-road Co.* v. *Kennedy*, 12 *Conn. R.* 499. *Same* v. *Boorman* & al. *Id.* 530. *Ward* & al. v. *Griswoldville Manufacturing Co.* 16 *Conn. R.* 593. *Sagory* v. *Dubois*, 3 *Sandf. Ch. R.* 466. *Mann* v. *Currie*, 2 *Barb. Sup. Ct. R.* 294. *Troy Turnpike and Rail-road Co.* v. *McChesney*, 21 *Wend.* 296.

3. That a party taking the stock *by assignment*, is subject to the same liabilities as the original subscriber. *Hartford and New-Haven Rail-road Co.* v. *Boorman* & al. 12 *Conn. R.* 593. *Mann* v. *Currie*, 2 *Barb. Sup. Ct. R.* 294.

4. That in this case, the person to whom the receiver is to look for payment of the balance of the stock, is *E. P. Cooke*, as the legal title was in him, and the stock stood in his name. *Marlborough Manuf. Co.* v. *Smith*, 2 *Conn. R.* 579. *Bank of Utica* v. *Smalley*, 2 *Cowen*, 770. *Commercial Bank of Buffalo* v. *Kortright*, 22 *Wend.* 348. *Adderly* v. *Storm* & al. 6 *Hill*, 624. *Mann* v. *Currie*, 2 *Barb. Sup. Ct. R.* 294. *Walker* v. *Devereaux*, 4 *Paige* 230. *Thorp* v. *Woodhull*, 1 *Sandf. Ch. R.* 411. *Dutton* v. *Connecticut Bank*, 13 *Conn. R.* 493. *In re Mohawk & Hudson Rail-road Co.* 19 *Wend.* 135.

5. That the form of *E. P. Cooke's* subscription, does not exonerate him from liability to pay up his share in full. For, in the first place, the form of subscription was substantially according to the charter, and intended to be precisely so. Secondly, the provision in the charter, and also in the subscription, for a forfeiture, was designed for the benefit of the company, and not of the stockholders; the forfeiture being authorized merely to make the stock collateral security for the payment of the money. *Troy Turnpike and Rail-road Co.* v. *McChesney*, 21 *Wend.* 297. 299. *Herkimer Manuf. & Hydraulic Co.* v. *Small*, 2 *Hill* 127. 129, 30. Thirdly, the subscription was an unconditional stipulation to pay according to the provisions of the charter, and even an actual forfeiture of the stock would neither destroy nor satisfy the promise. See the case last cited. Fourthly, admitting that

the subscription varies from the provisions of the charter, *E. P. Cooke* subsequently took a transfer of the stock, to hold according to the provisions of the charter, and also a proper certificate of ownership, by which he was held out, upon the books, to the creditors and other stockholders, as absolute owner, and bound by the charter. *Mann* v. *Currie* and *Adderley* v. *Storms,* ubi supra. Fifthly, a different construction would work a fraud both upon the other stockholders and the creditors of the company. *Walker* v. *Devereaux, Thorp* v. *Woodhull,* ubi supra, and other cases above cited. Stockholders and creditors are both represented by the receiver. *In re City Bank of Buffalo,* 10 *Paige* 379. *Mann* v. *Pentz,* 2 *Sandf. Ch. R.* 271. *Green* v. *Bostwick,* 1 *Sandf. Ch. R.* 186, 7.

6. That the agreement between *E. P. Cooke* and *Thomas B. Cooke,* to surrender a part of his stock and pay up the balance in full, and the company to receive such surrender and payment, was ineffectual, and fraudulent as to creditors and other stockholders. *Nathan* v. *Whitlock,* 9 *Paige* 152. 159. *Mann* v. *Pentz,* 2 *Sandf. Ch. R.* 273. *Brouwer* v. *Appleby,* 1 *Sandf. Sup. Ct. R.* 158. *and note, p.* 171. *Brouwer* v. *Hill, Id.* 629.

7. That the plaintiff is entitled to interest upon the instalments called and remaining unpaid, from the time they became due, and upon the balance, from the day fixed for the payment in the public notice given by him as received.

*Toucey,* (with whom was *F. Parsons,*) for the defendant, contended, 1. That the contract of *August* 13th, 1835, was not an original subscription, but a special contract for the purchase of stock, owned by the company; and by its terms, the stock continued or became the property of the company. By the terms of this contract, *E. P. Cooke* was neither a stockholder nor indebted, at the date of the contract of *March* 24th, 1841.

2. That by the latter contract, he became the owner of twenty shares, fully paid up, and the company the owner of the other twenty shares, as before the conditional sale. In the first place, the *company* was a party to this contract. It was made in its name, and by its principal financial officer, acting under general instructions. The money was received

for the company, and applied to its benefit. There was no disaffirmance of the contract ; which, under the circumstances, was equivalent to a ratification. The authority was sufficient. *Bank of Columbia* v. *Patterson's* admr. 7 *Cranch* 299. *Randall* v. *Van Vechten* & al. 19 *Johns. R.* 60. 1 *Pick.* 373. 8 *Dana*, 114. Secondly, the contract was a *valid* one. It was within the general powers of the company; it was fair; and was justified by the emergency. Thirdly, the *effect* of the transaction was, to make *E. P. Cooke* the owner of twenty shares paid up, and the company the owner of the other twenty, in their previous state.

3. That the company had *no claim* on *E. P. Cooke*, on the 17th of *May* 1842, to assign for the benefit of its creditors ; and the assignment conveyed to the receiver no claim against him. He owed the company nothing at that time.

4. That the contract of *March* 24th, 1841, cannot be regarded as fraudulent against creditors. In the first place, there is no allegation of fraud in the bill, without which it could not be found, or if found, the finding would be of no avail. *Gaylord* v. *Couch*, 5 *Day*, 223. *Hobart* v. *Frisbie*, 5 *Conn. R.* 592. *Shepard* v. *Shepard*, 6 *Conn. R.* 37. *Crocker* v. *Higgins*, 7 *Conn. R.* 342. *Skinner* v. *Bailey*, *Id.* 497. Secondly, the court has not found the arrangement fraudulent. Thirdly, the finding virtually excludes fraud on creditors or stockholders.

CHURCH, Ch. J. The object of this application is, to compel the executrix of *E. P. Cooke*, deceased, to pay to the plaintiff, as receiver, appointed under the laws of the state of *New-York*, the balance due for stock subscribed, by the deceased, to the capital of the *Canajoharie and Catskill Railroad Company*, to whom the whole assets and credits of that company have been assigned.

Every thing which appertains to the rights of the plaintiff, or fixes the obligation of the defendant, has transpired in the state of *New-York*, of which state all the parties, then in interest, were citizens.

The charter of this company, with all the proceedings under it, and the construction given to them by the courts of *New-York*, must chiefly guide us in the decision we make. The original, as well as the amended charter, made it lawful for

the directors of the company to require payment of the sums subscribed, at such times, in such proportions, and on such conditions, as they should see fit, under the penalty of the forfeiture of the stock and of previous payments thereon.

The rail-road company was duly organized under its charter, its original capital fully subscribed, and ten *per cent.* thereof paid in. Afterwards, authority was given to increase the capital stock four hundred thousand dollars.

Soon after the original stock was taken up, *Marvin* and *Day* purchased 11,265 shares of it, and then became insolvent and unable to pay the unpaid balance which would be due to the company upon its calls; and thereupon, on the 3d day of *July* 1835, they transferred these shares to *Cornwall, Mesick* and *Donnelly,* in trust for the rail-road company; and although this trust did not then appear upon the transfer, nor upon the company's books, yet, in our opinion, the transaction was such, as to reinvest the 11,265 shares again in the company; and so it was treated; for the corporation immediately thereupon received new subscriptions for capital to the same amount. Among the new subscribers was *Edward P. Cooke,* the deceased, who became a subscriber for forty shares. This subscription was obtained, by the president of the company, *Thomas B. Cooke;* it was peculiar in its form, and made upon a condition that all future calls should be paid as required, or the shares should become the property of the company, and be sold for their benefit. This was followed by a transfer of the forty shares, by the trustees, to the said *E. P. Cooke,* upon the books of the company, and also by a certificate of the president. All the other subscriptions, by other subscribers, were in writing, without any such condition. The special terms of *Cooke's* subscription were not known generally to the other subscribers, and the subscription itself was retained, by the president, *Thomas B. Cooke.*

The charter of this rail-road company, as we have seen, contains a provision, that the directors *may require payment* of subscriptions, under a penalty of the forfeiture of the shares. This has become a common, if not an universal provision in all charters creating monied or stock corporations; its forms may vary in different charters, but the purpose is the same in all—to enforce the punctual payment of the entire capital stock, and to secure to the corporation and to its creditors

*Hartford,*
*July, 1850.*

Mann
*v.*
Cooke·

an additional or cumulative remedy beyond that afforded by the common law.

It seems now to be generally admitted, that all subscribers to the capital stock of a corporation, which, by its charter, may require or demand payment of the capital subscribed, have incurred a debt, which may be enforced, by any appropriate common law or equitable remedy, and that such rem· edy is not at all impaired, by the further provision for the forfeiture of stock. Such is the law of this state, as established and recognized in the cases of the *Hartford and New-Haven Rail-road Co.* v. *Kennedy,* 12 *Conn. R.* 499. *The same* v. *Boorman, Id.* 530. *Ward* v. *Griswoldville Manufacturing Co.* 16 *Conn. R.* 593. And such also is the law of the state of *New-York,* by which this transaction is to be adjudged. *Troy Turnpike and Rail-road Co.* v. *McChesney,* 21 *Wend* 297. *Herkimer M. & H. Co.* v. *Small,* 2 *Hill,* 127. 129. *Sagory* v. *Dubois,* 3 *Sandf. Ch. R.* 466. *Mann* v. *Currie,* 2 *Barb. Sup. Ct. R.* 294. *Mann* v. *Pratt,* 2 *Sandf. Ch. R.* 273.

Was *E. P. Cooke* a subscriber to the stock of this railroad corporation, and subject to the same responsibilities as other subscribers? We think he was.

It is true, that *Marvin* and *Day* had purchased a large number of original shares, and if *Cooke* had purchased of them, he could not have been treated as a subscriber, but as an assignee only. *Hartford and New-Haven Rail-road Co.* v. *Boorman,* 12 *Conn. R.* 531. *Huddersfield Canal Co.* v. *Buckley,* 7 *Term R.* 76. *Sagory* v. *Dubois,* 3 *Sandf. Ch. R.* 466. But before any scrip had been issued to them, they had relinquished their stock to the company, through the agency of its trustees, and the corporation had become reïnvested with it, to issue again as original stock. And, as such, it was reïssued, and *Cooke* became a subscriber, and his shares were duly transferred to him on the books of the company, and he received a certificate as an original stockholder; and these shares have ever since stood as his on the books of the company.

We do not think that the subscription of *E. P. Cooke,* although different in terms from others, was different in its legal effect, or reserved to him a privilege, or created for him an exemption, not common to all. Nor ought we to believe,

that such was the intention of the parties ; as then we should impute to them a fraud upon the creditors of the company, by enabling *Cooke* to withhold a portion of the capital from their reach, and a fraud upon other subscribers : all were entitled to stand on equal terms, and to have their subscriptions subject to the same conditions.  If *Cooke* had purchased his shares of *Marvin* and *Day*, he could have made no stipulations with them which could have exonerated him from future calls ; and if he was a mere purchaser of the company's stock, as the defendant claims, he could no better make a bargain which should operate to the injury of the company's creditors, and stand opposed to the spirit of the charter.

We do not discover any essential distinction between the condition of *Cooke*, as a subscriber for this stock, which had once before been taken up and relinquished, and his condition if he had subscribed originally : in both cases, his subscription amounts to nothing more than a purchase of stock or shares which the company had to sell.   12 *Conn. R.* 510, 511.

*Edward P. Cooke* was, therefore, we conclude, an actual subscriber to the stock of this company, and not a mere contractor for it, with an option to take or refuse it.

If the corporation had the power, by such a stipulation as this, or by any other, to preclude themselves from a remedy to enforce the payment of the full amount subscribed for, it does not follow, that the creditors of the company can be precluded, by any such condition.  This corporation was not created for its own sake, nor to serve its private ends alone, but for public purposes ; and it would pervert some of the great ends of its being, and the objects of its charter, if it had legal power to dispose of its stock upon any terms which should defeat the public interests and defraud its own creditors.   This plaintiff, as receiver, is here the representative of the creditors, seeking to enforce their claims against a delinquent subscriber.   *Lees* v. *Canal Co.* 11 *East*, 645.   *Ward* v. *The Griswoldville Manuf. Co.* 16 *Conn. R.* 593.

We do not intend to say, that if stock or shares which have been issued and paid for, shall again fall into the hands of a corporation, that they may not be sold again, by the company, upon such terms as other holders of stock may sell it, as this would be no diversion or withdrawal of the capital.

The facts specially alleged in the answer of the defendant, that by reason of them, *E. P. Cooke* was discharged from all liability to pay any thing upon the twenty shares of stock, parcel of the forty shares subscribed for, because they had been transferred back again to the company, we cannot admit to be sufficient to discharge his estate from this claim of the receiver.

We waive the consideration of any question as to the authority of *Thomas B. Cooke*, the president of the company, to make the arrangement of the 24th of *March* 1841, and whether the company would itself have been bound by it. The corporation was, at this time, greatly insolvent, and its creditors had a right to insist, that the capital should be kept good, and no part of it diverted or withdrawn.

As this court said, in the case of the *Hartford and New-Haven Rail-road* v. *Kennedy*, so we now say, that this company was formed for the purpose of raising the necessary funds *in money*, to prosecute and complete a work of great public utility. The forty shares subscribed by *E. P. Cooke*, was a part of these *monied funds* or capital; and the public and creditors had a right to rely upon them, as so much money, and as a warrant of credit, not only for prosecuting the work, but as a fund for the payment of the present and future liabilities of the rail-road company.

If these twenty shares have been, as the defendant claims, effectually released by *Cooke*, and relinquished to the company, and received by them, then just so much has been taken away from its available means. Whether this was done with an intent to defraud the public, or the creditors of the corporation, as a question of fact, it is not for this court to determine; but that its consequences would operate as a fraud upon both, we cannot doubt; and this is reason enough why we cannot sustain this transaction.

The suggestions of the defendant's counsel, that no question of fraud, actual or legal, can be entertained here, because fraud is not alleged in the plaintiff's bill, we do not regard. No question of fraud is made in the bill, or grows out of it, but arises solely from the facts set out in the defendant's answer; and from these facts and their necessary consequences, we repudiate the relinquishment of the twenty shares, as fraudulent in law, at least.

*Hartford,*
*July, 1850.*

Mann
*v.*
Cooke.

But as against the creditors and stockholders of this corporation, there has never been a legal transfer of these twenty shares back again to the company, however it might have been treated as between *Cooke* and the company. The power of attorney to effect this transfer, was kept, by the president, in his own pocket ; he never acted under it ; and the whole forty shares remained, standing on the books of the company in the name of *E. P. Cooke*, as a continuing stockholder, up to the time of his death. The receiver, as agent of the creditors, could look no where else for the owner.

The supreme court of the state of *New-York*, in the cases of *Mann* v. *Currie* and others, arising under this charter, have taken the same view of this question. 2 *Barb. Sup. Ct. R.* 294. See also *Adderley* v. *Storm*, 6 *Hill*, 624. 629.

We have no doubt but this bill must be sustained, and interest be added to the unpaid balance due on the stock subscribed for, from the time fixed by the receiver for payment, by his public notice for that purpose.

We entertain no doubts upon the various questions submitted to us upon this record ; but if we had, we should consider ourselves bound to acquiesce in the construction of this charter, and to regard the proceedings under it as they have been judicially considered in the state of *New-York*. The courts of that state, in cases growing out of proceedings under this charter, have entertained the same views as we have now expressed. *Mann* v. *Currie* & al. 2 *Barb. Sup. Ct. R.* 294. *Mann* v. *Pentz* & al. 2 *Sandf. Ch. R.* 257. *Sagory* v. *Dubois*, 3 *Sandf. Ch. R.* 466.

We shall advise, that the plaintiff is entitled to the relief he asks.

In this opinion the other Judges concurred.

Decree for plaintiff.