## SUPREME COURT.

JAMES FISK, JR. and others agt. THE CHICAGO, ROCK ISLAND and PACIFIC RAILROAD COMPANY and others.

### HATCH agt. SAME.

### FANSHAWE agt. SAME.

### BELDEN agt. SAME.

This court has jurisdiction of actions brought by citizens of this state, as stockholders of a railroad coporation created under the laws of the states of Illinois and Iowa, for the purpose of interposing, by injunction, to stay the use of proceeds of illegal and spurious stock issued and sold by such corporation.

Neither a railroad corporation nor its directors have the right to make certificates purporting to represent capital stock of the corporation, which has not in fact been

subscribed and paid for, and put them on the market for sale as stock. Such issues are *ultra vires.*

A subsequent statute passed by the state of Iowa alone, ratifying such false certificates of stock cannot aid the corporation ; for the state of Illinois has as much control of the matter as the state of Iowa, the stock being the issue of a consolidated corporation of both states. ·

An injunction should not be issued restraining the corporation, except so far as the illegal certificates are concerned—the proceeds of which should be held by the court to protect the company against damages in favor of the holders of the false certificates, or to enable it to retire them.

*New York Special Term, at Chambers, April,* 1868.

THE plaintiffs in these several cases, sued as holders of original shares of the stock of the Chicago, Rock Island and Pacific Railroad Company, a corporation created by the states of Illinois and Iowa. The complaints alleged that the new issue of 49,000 shares of the stock was illegal and void, and demanded injunctions against the use of the proceeds of that issue, and the appointment of a receiver of such proceeds. Motions were made by the plaintiffs for the appointment of such receiver, and motions were made by the defendants to dissolve the pending injunctions against the use of the proceeds. All the motions came on and were heard together.

D. D. FIELD, J. E. BURRILL and J. K. PORTER, *for the the plaintiffs.*

C. TRACY, W. M. EVARTS, W. FULLERTON, A. J. VANDERPOEL and J. N. WHITING, *for the defendants.*

CARDOZO, J. I shall not follow the counsel over the extended field of discussion in which they indulged on the argument of the motion in these cases. The statement of a very few, plain and well recognized propositions is all that is necessary to dispose of the question really involved. My views may be briefly expressed, as follows :

1. Even if my reflection and examination led me to a different opinion, which they do not, I should not feel at liberty to deny the existence of the jurisdiction which it is sought to have the court entertain in these actions, since the point has been fully and distinctly decided by the general

term of this court in *Griffiths* agt. *Scott*, cited on the argument. My views accord with that decision, but in any event, I should consider myself bound to follow it. In that case Judge INGRAHAM said: " I think there can be no doubt but that a citizen of this state can maintain an action against a foreign corporation for any cause connected with the recovery of or protection to his property or rights in said corportion." Judge LEONARD, in the same case, held that this court " has not the power to remove or appoint the trustees or directors of a foreign corporation, but it can enjoin their action when illegal, or when acting fraudulently or unlawfully, if they are personally within our jurisdiction." These remarks are apposite to the present suits, and dispose of the point as to jurisdiction raised by the defendant's counsel.

2. The issue of the 49,000 shares complained of was *ultra vires*. Neither the corporation nor its directors had, in any view, the right to make certificates purporting to represent capital stock, which had not in fact been subscribed and paid for, and to put them on the market as stock and sell them below par. If they might do so and sell them at a discount of one or two per cent, they might sell them at fifty per cent or any greater discount, It is not a question of good faith, or of honest intention, or of wise policy, or skillful or discreet management upon the part of the directors; it is a question of power. Every paper issued purporting to represent stock which had in fact no existence, was a false certificate; and the directors were not authorized to make false certificates. No such power attaches to their office, and the stockholders have the right to complain that they have assumed a power which was not conferred upon them. These views controlling of the case are so familiar that they do not require the citation of authorities to support them.

3. The statute passed by the legislature of Iowa (*Laws of Iowa*, 1868, *chap.* 13), cannot alone ratify the act of the directors. The state of Iowa has not exclusive jurisdiction over this corporation. The certificates do not purport to

represent stock in the original corporation created by the state of Iowa, but assume to represent stock of the consolidated company consisting of that corporation and the one found under the laws of Illinois. The latter state, therefore, has quite as much control of the present matter as the state of Iowa. Certainly the act of either alone will not aid the defendants.

4. I see no reason why any injunction should have issued to restrain the defendants, except so far as the 49,000 illegal certificates are concerned. The transfer of the illegal issue was properly enjoined, and the proceeds should be held by the court to protect the company against damages in favor of the holders of the false certificates, or to enable it to retire them; but nothing is disclosed in the papers which satisfies me that it is either proper or necessary to prevent dealings in the genuine stock or to interfere with the business of the corporation, except to the extent I have mentioned.

5. Respecting the motions to attach the defendants, I have only to remark that I do not think that any breach of the injunction has been established by the affidavits submitted to me, calling for any present action.

6. I shall appoint Hugh Smith, Esq. (the deputy city Chamberlain), receiver of the proceeds of the 49,000 illegal shares, requiring from him a bond with surety, to be approved in $500,000, and directing that each half million of dollars which shall come to his hands as such receiver, shall be deposited alternately in the United States Trust Company and in the Union Trust Company.

7. The costs of these motions will be costs in the actions, and abide the event of the same.

8. An order in accordance with these views and containing such provisions as may be deemed necessary to carry them into effect, will be prepared by the plaintiffs' attorneys and presented to me for settlement.

Ordered accordingly.