Speir, J.
This is a motion to continue the injunction order granted pendente lite until the trial of the action shall be had. The examination of the question involves the legality, as well as principles of an equitable character relating to the proposed issue of stock not before issued by the Western Union Telegraph Company, under an agreement between it and the other two defendant companies, under which the last-named companies agreed to sell, convey and assign to the first-named company all their property except the franchise to be a corporation.
The Western Union Telegraph Company was organized under the laws of this State for the purpose of constructing, working and maintaining telegraph lines ; and its articles of association constitute its charter.
The 24th article provided “ that whenever the directors shall determine that it is for the interest of the company to extend its business, by adding to the number of wires or conductors upon the lines aforesaid, or by constructing any line or lines to operate in connection therewith, they shall enter their determination upon the minutes at large, and all such additions shall be made by increase of the capital stock, and in no other manner. The board shall fix the amount of increase necessary for the purpose aforesaid.”
The agreement above referred to contains this provision : “ Th,e Western Union Telegraph Company shall take such proceedings as. it may be advised to *432 cause its capital stock to be increased by an addition to its present outstanding stock of $38,926,590, represented by shares of $100 each, and shall issue and deliver the same to the Union. Trust Company for distribution as follows: $15,525,590 to holders of its present shares, the same being to represent its investment of earnings, in the purchase, construction and equipment of additional lines, wires, and its general plant, since the first day of July, 1866, and the remaining sum of $23,400,000 for the acquisition of new lines, property,” &c.
The directors qf the Western Union Company seem to have been ■ advised, and therefore determined, to create this stock of over $15,000,000, and divide it among its present shareholders, without any consideration for its issue. If there be no subscription made, or money, or other consideration paid, or agreed to be paid, such stock, in my opinion, has no foundation to ,rest upon. It does not exist, and as such in law has not the characteristics of property. Capital stock, in any legal sense, can only be created by contract, whether it be by subscription or any other mode. There must be an agreement founded upon some good legal consideration, and cannot be dealt with otherwise. When issued in this way it imparts to the stock the quality and character of property. In charters of incorporation it is called capital stock, because the corporate capacity to create it is given.
Now the directors say this stock is given to the holders of its present shares to represent its investment of earnings in the purchase and equipment of.additional lines and general plant since July 1, 1866. It is not stated or pretended that the company gave a dollar for its issue, nor can it be claimed that the additions which had been gathered for fifteen years, by any construction of the alleged agreements or by any intendment of law, formed any consideration whatever *433 for issuing this stock to be distributed as proposed: These accumulations already belonged to the corporation as existing assets, no dividend having been declared on them. No increased value was given to these properties by a declaration that fifteen millions of unpaid stock had been issued for the purpose of representipg them to the shareholders or the public at large.
The law regulating the duties of directors and managers of corporations forbids such directors and managers of any incorporated company in this State to make dividends except from the surplus profits arising from the business of such corporations; and further forbids the directors of any such company to divide or in any way pay to the stockholders or any of them, any part of the capital stock of any such company, or reduce the capital without the consent of the legislature (2 R. S. 5 ed. § 2, p. 99, tit. 4).
It was argued by some of the counsel for the defendants that this statute had no application to telegraph companies. The object and intention of the statute has been decided by the supreme court of the State. Nelson, late Chief Justice, in Bowen v. Lease (5 Hill, 221) says: ‘‘This title relates to and regulates the conduct of the directors, officers, and agents selected to direct and manage the corporate business, and contains a well-digested code of laws, civil and penal, for the government of the corporate brotherhood,” consequently its provisions are made applicable as well to all future as existing corporations. It is sufficient to say that since the foregoing decision its provisions have been adopted in our courts, where corporations have been organized under the general law. Were it otherwise, these organizations would not be under the control of any of the restraints of the legislature conferring corporate powers. If they are permitted to usurp powers not granted, it is done at the expense of the public. Sound public policy, therefore, demands that *434 they should be kept strictly within their chartered limits, and every contract made by them which exceeds those limits, like all other contracts in contravention of public policy, is illegal and void.
But the law absolutely forbids the. directors of the company to divide, or in any way to pay to the stockholders, any part of the capital stock.-. Here the directors have undertaken to divide and pay stock unlawfully issued to their stockholders. If the issuing of lawful stock is forbidden to be divided and paid to stockholders, what can be said in justification of issuing stock without any consideration and dividing and. paying it away % This act was clearly ultra vires, and under the law and the decisions cannot be ratified by the stockholders, even though all had, expressly and with full knowledge, assented or acquiesced in it. The stock was issued for an unlawful purpose, proposed to be divided and given away to the stockholders, constituting a large portion of the whole capital stock on which future dividends are to be paid. In Ashbury Railway Co. v. Riche (L. R. 7 H. of L. 653 ; S. C., 14 Moak Eng. 42, 60; rev’g 9 Exch. 214; S. C., 10 Moak Eng. 396) Lord Chancellor Cairns states the doctrine : “ If it was a contract void from the beginning, it was void because the company could not make the contract. If every shareholder of the company had been in the room and' every shareholder had said ‘ that is a contract which we desire to make, which we authorize ■ the directors to make, to which we sanction the placing of the seal of the company,’ the case would not have stood -in a different position from that in which it now stands. The shareholders would thereby, by unanimous consent, have been attempting to do the very thing which by the act of parliament they were prohibited from doing.
. . . . This contract, in my judgment, could not have been ratified by the unanimous consent of the whole corporation” (See, also, Great Eastern Railway v. *435 Turner, L. R. 8 Ch. App. 149). In Whitney Arms Co. v. Barlow (63 N. Y. 62, 68), Judge Allen clearly points out the distinction between acts ultra vires which can be acquiesced in and those which cannot be. Acts which cannot be are those “which are not within the powers conferred upon the corporation by the act of its creation, and are in violation of the trust reposed in the managing board by the shareholders, that the offices shall be managed and the funds applied solely for carrying out the objects for which the corporation was • created.” But it does not appear that the plaintiff acquiesced in the action of the directors under the agreement; on the contrary, the record shows from the time the agreement was made he appeared, in the' courts and at the several meetings, and resisted the action of the directors in their proceedings to carryout the agreements.
There was some discussion whether capital stock could be issued at less than one hundred cents on the dollar, or the par provided by the charter. It is a general rule of corporation law that payment for original stock must ,be made in money only, and that such stock cannot be issued below par. Much more must this be so if the plain language of the statute requires full payment in money. The latest authority on this subject is Barnes v. Brown (80 N. Y. 527, 534). The court say, “It is not claimed and could not be claimed that the corporation or its directors could create any valid stock by issuing the same without consideration. The directors assuming to issue stock in that way would perpetrate a wrong upon the corporation and its stockholders, and a fraud upon every person who took such stock as full paid stock, relying upon the appearances and deceived thereby ” (Sturges v. Stetson, 1 Biss. 246; Knowlton v. Congress Springs, 57 N. Y. 518, 542; Neuse River Navigation Co. v. Commissioners of Newbern, 7 Jones N. C. 275).
*436 I am unable to discover any facts or arguments i n the voluminous affidavits and other papers submitted by the defendants, after an attentive perusal, which conflict with the conclusions I have arrived at in this opinion. In giving my concurrence, as I do, in the views expressed by the learned chief judge of this court,* I must refer to the defendant’s answer on one point at least as sustaining the plaintiff’s case. The fundamental error of the defendant’s position is clearly exposed by a part of their answer received on the present motion. Before quoting it may be premised that if the thing proposed to be divided among the individual shareholders is capital, common sense, the uniform custom of corporations and the plain words of the statute declare that it is unlawful to make such a use of capital. It is equally clear that if the thing divided is profits, the individual shareholder has an unalienable right to take his portion into his individual control and power of enjoyment.
The part of the answer referred to places the defense upon the following ground. “ If the said surplus earnings had been distributed in cash dividends from time' to time it would have been necessary for said Western Union Telegraph Company to borrow money or issue new stock for cash, for the purpose of making the purchases in which such surplus earnings were invested.”
It must be seen that in such a contingency the share of the cash that would have gone into the possession of the individual shareholder would have been money in his hands capable of use by him as money as distinguished from an investment. That money he could use as he pleased in any of the thousand ways or keep it as money.
The answer proceeds to allege: “ and the effect of the transaction brought about by the agreements is the *437 same as if such surplus; earnings had been already divided among the stockholders in cash, and stock issued and subscribed for in cash and the proceeds thereof appropriated for such several purposes.”
The agreements referred to provide that the shareholders .shall receive capital stock. Can any mental process of thought or reasoning make capital stock the-same thing as money to a shareholder which represents his part of the surplus earnings ? Is there no immutable distinction and difference between capital and earnings % Are not these terms so well known in legal phrase and common use as to be incapable of the same import ? Is is possible that a man who has a right to earnings can, of law, be forced to take his earnings in capital % Can a shareholder be forced to subscribe to capital ? Ought the law to force him to believe or perceive that to give him capital is equivalent to his having had, in the past, cash ? So. far as the defense thus stated in the answer being sound, it seems as if its terms pointed to an an irremediable defeat of the proceedings proposed by the. agreements.
The injunction order must be continued to prevent the distribution of $15,526,290 of the increase of capital stock until judgment.

 See p. 420 of this vol.