Oliphant v. The Woodburn Coal & Mining Co.

AFFIRMED.

OLIPHANT v. THE WOODBURN COAL AND MINING COMPANY.

1. **Contract:** FOR PAYMENT OF MONEY UPON HAPPENING OF A CONTINGENCY: MATURITY OF: DUTY TO BRING ABOUT THE CONTINGENT EVENT. The plaintiff, in one count of his petition, sought to recover of defendant upon a written promise to pay money when it "should succeed in sinking a shaft on its leased lands and developing a paying vein of coal," the contract being silent as to when the company should sink the shaft, or as to what efforts it should make to do so, except that it provided that the company should "use all reasonable efforts to sell stock to raise sufficient money to dig a shaft:"—*held* that the company was not bound thereby to sink a shaft, regardless of the means at its command and of the prospect of striking a paying vein of coal, nor was it bound to sell its stock at less than par to raise the necessary funds to sink a shaft; also that the plaintiff could not maintain an action for the recovery of the money until the happening of the event named in the contract, unless he could show that the company acted in bad faith, or that its officers abused their discretion, with the intent to defer and defeat the happening of that event, and thus to defraud the plaintiff of his rights under the contract.

2. **Corporations:** SALE OF STOCK BY DIRECTORS FOR LESS THAN PAR: ULTRA VIRES. It is *held* in this case, *arguendo*, that the officers of a corporation cannot properly sell the corporate stock for less than its par value.

3. ————: MISMANAGEMENT OF: ACTION FOR DAMAGES BY STOCK-HOLDER. A holder of corporation stock cannot maintain an action against the company for damages in the depreciation of his stock, resulting from the mismanagement of the affairs of the company, unless he shows that the injury which he has sustained to his stock is peculiar to him alone, and does not fall equally upon the other stock-holders.

*Appeal from Clark Circuit Court.*

WEDNESDAY, APRIL 23.

THE plaintiff avers that the defendant is a corporation, incorporated under the laws of Iowa; that he is the owner of twenty-six shares of stock in the corporation; that the defendant has been guilty of bad management, by reason of which the stock has become depreciated in value, and he has thereby sustained damages. He also avers that he entered into a written contract with the defendant, whereby defendant was to pay him a certain sum of money; that the money called for by the contract has become payable, but remains unpaid. To aid himself in enforcing his alleged claims, he sued out an attachment and levied upon the defendant's property.

The defendant for answer denied the alleged bad management, admitted the execution of the contract, but denied that anything had become due under the same. By way of counter claim, it averred that the attachment was wrongfully sued out, and prayed judgment for damages. There was a trial to a jury, and verdict and judgment were rendered for the defendant for twenty-five dollars. The plaintiff appeals.

*John Chaney, B. H. Mitchell* and *Temple & Tallmann,* for appellant.

*Stuart Bros.,* for appellee.

ADAMS, J.—The proper consideration of the questions presented requires a more detailed statement of the facts out of which the controversy has grown. The defendant is a cor-

poration organized for the purpose of mining for coal. In April, 1880, the defendant, having taken a lease of certain land in Clarke county, supposed to contain coal, entered into a written contract with the plaintiff, whereby it employed him to drill a prospect hole at a certain place, and at a certain agreed price per foot. The work was to be prosecuted until coal should be discovered or the plaintiff should be stopped by the company. Under the contract the plaintiff drilled to the depth of about four hundred and twenty feet, but did not discover coal. Whether he was stopped by the company or not the parties do not appear to have been agreed. There was evidence that the plaintiff reported to the company that he had got a piece of iron, a knuckle, in the drill hole, and could go no further. The plaintiff had not been paid the full contract price, and there appears to have been a disagreement as to the amount to which he was entitled under the circumstances. He avers in his petition that "there was some trouble or difference in regard to a settlement." It appears, however, that a settlement was finally reached. The company paid the plaintiff fifty dollars in money, gave him twenty-six shares of stock in the company, and the balance of his claim, stated to be $308, was to be paid in money when the company should succeed in sinking a shaft on their leased lands and in finding and developing a paying vein of coal. This settlement was reduced to writing, and the writing constitutes the contract sued upon. It is not averred by the plaintiff that the company has succeeded in finding and developing a paying vein of coal, but it is averred that the company has failed and refused to sink a shaft, that the failure to sink a shaft has caused the stock to depreciate in value, and that by reason of the failure the sum of $308, provided for in the contract, has become payable.

In regard to the operations of the company, we may say that it appears that it commenced at one time to sink a shaft, but abandoned or suspended the work, because it estimated that it would cost from $15,000 to $20,000 to sink a shaft,

and it had not the means to do it, and judged that it would not be able to obtain the requisite means without some evidence of the existence of coal; that for the purpose of obtaining such evidence it proceeded to drill another prospect hole, and was engaged in drilling it when this action was brought. The contract was executed in March, 1881, and the action was brought after the lapse of about fourteen months.

I. We will proceed, first, to inquire relative to the rule of law applicable to the maturity of the plaintiff's claim under the contract. We have seen that it was made payable upon the finding and developing of a paying vein of coal, and that no coal has been found. The plaintiff contends, however, that an implied obligation arose on the part of the defendant to make reasonable efforts, in view of all the circumstances, and that, if the company had not made such efforts, the claim had become payable, and that it was his right to have the question submitted to the jury as to whether the company had made such efforts. In accordance with this view, he asked an instruction in these words:

*1. CONTRACT: for payment of money upon happening of a contingency: maturity of: duty to bring about the contingent event.*

"If you find that the defendant did not, within a reasonable time after the execution of the contract, make reasonable efforts to fulfill the terms thereof, this would constitute a breach of said contract on the part of the defendant, and the plaintiff would be entitled to recover the amount which would become due upon the completion of the contract, if the same had been fully completed."

The court refused to so instruct, and gave an instruction as follows:

"Before the plaintiff can recover, he must show that the defendant acted in bad faith with him, with intent to defeat his realization of future compensation under the contract, or that in its acts it committed such abuse of a fair and reasonable discretion in the performance of its duties assumed in view of its contract, that it did produce the result complained of; and further, that, in the exercise of a fair and reasonable

discretion, the plaintiff would have realized the compensation agreed upon under the contract." The ruling of the court in refusing the instruction first set out, and in giving the second, is assigned as error.

The plaintiff's complaint is that the company had not, at the end of fourteen months from the time it entered into a contract with him, sunk a shaft to any great depth, and was still merely prospecting by drilling prospect holes; that under the contract the company was bound to sink a shaft within a reasonable time, or make reasonable efforts to do so, and that it was the plaintiff's right to have the question submitted to the jury as to whether, under the evidence, the company had discharged its obligation to the plaintiff in this respect.

It is not contended by the plaintiff that the obligation can be found expressed in the contract. A copy of the contract is attached to the plaintiff's petition, but we do not deem it necessary to set it out. It is sufficient for our purpose to say that the contract is silent as to when the company would sink a shaft or what effort it would make, or whether it would make any at all, except that it is provided that the company will "use all reasonable efforts to sell stock to raise sufficient money to dig a shaft."

As to the implied obligation upon which the plaintiff relies, we have to say that, if there was any, we do not think that the company, if it had sufficient money, was bound to sink a shaft regardless of expense, and in the absence of any prospect of coal. Whether the managing officers could have bound the company to do so we need not inquire. We do not think that any such promise was raised by mere implication of law; nor do we think that there was an implied promise to use what might seem to others to be reasonable efforts.

If the stock had not all been issued, it was in the regular course of business for the officers to procure subscriptions to what remained, or, to use the language of the contract, to sell it. The officers might properly enough bind themselves

to use reasonable efforts to do this. But the raising of money by sale of stock would not of itself have caused the plaintiff's claim to mature. The officers still had a discretion to be exercised, in view of the circumstances, as they should appear from day to day. It may be conceded that there was an implied obligation to act in good faith toward the plaintiff, or, what is nearly the same thing, not to abuse their discretion. But they did not, we think, undertake to contract away their discretion. They had been elected for the express purpose of exercising it. Their experience, knowledge, judgment and skill had been contracted for by the company, and we will not presume from anything which we find in the contract that they intended to subordinate their judgment to what they might suppose would be that of a jury. If, then, they did not contract away their discretion, it became, at most, as the court held, a question of the want of good faith, or abuse of discretion. It is true, the court went a little further, and held that the plaintiff, in order to recover, should also show that his claim would have become payable, if a fair and reasonable discretion had been exercised in the work. Possibly, if the plaintiff had shown a want of good faith or abuse of discretion, his claim should be deemed to have become payable without any further showing. But it is not material to determine this. We hold that the plaintiff could not recover without showing a want of good faith, or abuse of discretion, and we are unable to find the slightest evidence of either. The company did not sell out, so as to put it out of its power to discover coal, nor did it refuse to proceed after having discovered it. It retained its lease and pursued its work of prospecting, peparatory to determining where and when to sink a shaft. It might, perhaps, have prospected more thoroughly by sinking a shaft instead of drilling. But it could not do this without the means, and the evidence not only fails entirely to show that it had the means, but tends to show affirmatively otherwise.

It is insisted by the plaintiff in argument that the com-

Oliphant v. The Woodburn Coal & Mining Co.

pany might have sold stock, and was bound by its contract to make reasonable efforts to do so, and that it failed to make such efforts. The evidence shows a slight effort on the part of the company to sell stock. Whether that was a reasonable effort must depend upon other evidence. The company was not bound to make a vain effort, and there is no evidence that a share of stock could have been sold at par. We infer, indeed, that it could not. The evidence shows that it was worth ten dollars per share. If the shares were of the usual size, one hundred dollars each, the stock could have been sold at only ten cents on a dollar of its par value.

The officers could not properly sell for less than par value. In Green's Brice's Ultra Vires, 143, notes, it is said "The sale of stock in a corporation by the directors at a less rate than the price fixed in the charter is a fraud upon the law and the stock-holders; citing *Sturges v. Stetson*, 1 Biss., 246; *Fosdick v. Sturges*, Id., 255; *Mann v. Cooke*, 20 Conn., 188; *Fisk v. C., R. I. & P. R. Co.*, 53 Barb., 513; *O'Brien v. Same*, Id., 568; *Neuse River Nav. Co. v. Commissioners*, 7 Jones, Law, 275. See, also, *Osgood v. King*, 42 Iowa, 478.

2. CORPORA-TION: sale of stock by officers for less than par: ultra vires.

While the instruction refused is very general in its terms, and perhaps not objectionable as an abstract proposition, there was nothing in the evidence, we think, that would have made it proper to give it. On the other hand, the instruction given was, we think, in the main correct, and if there was any error, it was, we think, under the evidence, without prejudice.

II. Upon the question as to the alleged depreciation of stock by the defendant's mismanagement, the court instructed the jury that, to enable the plaintiff to recover, "he must show that the injury which he has sustained to his stock was peculiar to him alone, and did not fall alike upon other stockholders and himself." The giving of this instruction is assigned as error.

3. ——: mismanagement of: action for damages by stockholder.

An incorporated company is composed of the stockholders.

It would be useless to allow each to recover a judgment against the company for damages sustained for the depreciation of stock.

The plaintiff contends, however, that, while the injury sustained by depreciation of stock was not peculiar to him, he alone should be allowed to recover, because he alone stipulated for the sinking of the shaft, and the failure to sink the shaft was the mismanagement which caused the depreciation.

Whether the officers of a company can stipulate with a stockholder for a certain line of policy, so as to render the company liable for damages if such line of policy is not followed, we need not determine. There are several inseparable objections to the plaintiff's position. The contract in question did not bind the company to sink a shaft. The most that can be said is that it bound the company not to act in bad faith toward the plaintiff, nor abuse its discretion; and we have found that there was no evidence that it did either. Besides, the evidence did not show, nor was there any evidence tending to show, that the sinking of the shaft would have resulted in the discovery of coal, and, if it had not, the company might have been in a far worse condition than it is now. It is true, there is evidence that the stock is worthless; but it might be much worse than worthless if it was not fully paid, and the company had incurred indebtedness. Many other errors are assigned, but the views which we have expressed dispose of the case, and the judgment must be

AFFIRMED.