## ZELAYA MIN. CO. *v.* MEYER.

### (*City Court of New York, General Term.* January 29, 1890.)

**CORPORATION—SUBSCRIPTIONS TO STOCK—ULTRA VIRES.**

> To induce persons to subscribe, a corporation offered its stock at 30 per cent. less than its par value. *Held*, under Laws N. Y. 1848, c. 40, § 10, providing that the capital stock "shall all be paid in, one-half thereof within one year, and the other half thereof within two years, from the incorporation of said company, or such corporation shall be dissolved," that the scheme, and contracts of subscription founded on it, were *ultra vires*, and not enforceable.

Appeal from special term.

The plaintiff is a mining corporation created under the act of 1848, **c.** 40, with a capital of $600,000. It issued a prospectus for the purpose of obtaining subscriptions to its capital, offering its stock, of the par value of $10 a share, for $7 per share. The defendant became a subscriber on these terms for 200 shares, and paid $140, 10 per cent. of the purchase price, and 200 shares were allotted to him in accordance with the prospectus. The company thereafter assessed and demanded from the defendant further payments or installments aggregating $300, and, on his failure to pay, this action was commenced to recover the same. The defendant demurred to the complaint. The demurrer was overruled, and from the interlocutory judgment entered thereon the defendant appeals.

Argued before McADAM, C. J., and EHRLICH, J.

*Seaman & Wise*, for appellant. *O. L. Stewart*, for respondent.

PER CURIAM. The demurrer presents the question whether the scheme proposed by the plaintiff for placing its corporate stock on the market was legal. We assume that a corporation, like an individual, may sell stock owned by it for any price that meets the approval of the contracting parties, (*Otter* v. *Petroleum Co.*, 50 Barb. 247;) and that, in selling its own stock for less than par, it may be assumed that the stock was fully paid up, and afterwards acquired by the company, (Id.) But that is not this case. The prospectus is-

sued by the plaintiff was to induce persons to become subscribers to its capital stock; in other words, to contribute the capital required by its charter, to-wit, $600,000. The act of 1848, c. 40, § 10, provides that "the capital stock, so fixed and limited, shall all be paid in, one-half thereof within one year, and the other half thereof within two years, from the incorporation of said company, or such corporation shall be dissolved." The defendant was not a purchaser of stock, but an original subscriber, and by the terms of his subscription he was to receive 200 shares of the capital stock in the corporation, (plaintiff,) of the par value of $10 per share, at the rate of $7 a share. The same privilege was afforded to any one willing to subscribe, so that, after selling all of its 60,000 shares, the company would receive in cash from its subscribers $420,-000, leaving a deficiency in its capital of $180,000. Such a scheme would operate as a fraud on the state, the grantor of the franchise, on the creditors, (for the capital is a fund for their benefit,) and on the statute; for the plan proposed would make it impossible for the corporation to raise the capital required by its charter, viz., $600,000, and the corporation would, as a consequence, have to be dissolved under the section (14) before referred to. The defendant, therefore, claims, and with reason, that, the scheme being illegal, his subscription is not binding.

It is a general rule of corporate law that the payment of original stock must be made in cash, and that it cannot be issued for less than the par value, as fixed by the charter. *Navigation Co.* v. *Commissioners*, 7 Jones, (N. C.) 275; *People* v. *House Co.*, 44 Barb. 634; *Hatch* v. *Telegraph Co.*, 9 Abb. N. C. 430. Our attention has not been called to any statute changing this rule, or authorizing the scheme by which the plaintiff was to raise its capital. The issuing of capital stock at 30 cents on the dollar less than its par value amounts practically to a reduction in an unauthorized form of the capital, *pro tanto*, at the will of the directors. We think the scheme, and the contract of subscription founded on it, are therefore *ultra vires*, and not enforceable. *Spring Co.* v. *Knowlton*, 103 U. S. 49, 57 N. Y. 518; *Hatch* v. *Telegraph Co., supra; Sturges* v. *Stetson*, 1 Biss. 246; *Fosdick* v. *Sturges*, Id. 255; *Mann* v. *Cooke*, 20 Conn. 188; *Fisk* v. *Railroad Co.*, 53 Barb. 513; *O'Brien* v. *Railroad Co.*, Id. 568. Corporations are creatures of the state, intangible things, incapable of thought or action, except in the fiction of the law, and courts must scrutinize the conduct of those who manage them, and hold them to the strict letter of the statute, particularly in matters pertaining to their organization. If their inception is founded on error, it may prove a poor foundation, ready to topple over and bury innocent subscribers and creditors in the ruins. If a corporation may solicit subscribers to its stock at 70 cents on the dollar of its par value, what is to prevent it from doing the same thing at any smaller rate its officers may designate? The very idea suggests want of stability, sanctions fictitious values, and leaves the corporation at its inception with a capital impaired to the extent of $180,000. A corporation so crippled cannot be expected to keep pace with live and solvent corporations, nor to yield returns in the shape of dividends upon a capital it never possessed. The representation in its charter as to the amount of capital is at once falsified by the fact. Truth finds no lodgment in the scheme, and the fact that the defendant subscribed with knowledge does not deprive him of his right to object to being called upon to furnish further aid to it. *In pari delicto potior est conditio defendentis.* The scheme is against the policy of the law, is injurious to the public and cannot be sanctioned by the courts, in the absence of statutory authority. The corporation was not created for its own sake, nor to serve its private ends alone, but for public purposes, and it must not be allowed to pervert any of the great ends in view, or the objects of its charter. The respondent suggests that the stock was issued in payment for mines and other property. Laws 1853, c. 333. The complaint, however, contains no such allegation. Indeed, if it had been so issued, it would have belonged to the person

from whom the mines or property was purchased. The present stock was not issued to any one, for the action is, as before remarked, against an original subscriber, and not a purchaser. For these reasons, the judgment must be reversed, and interlocutory judgment ordered on the demurrer in favor of the defendant, with costs.