BURNHAM & VAN SHAICK v. N. W. INS. CO. *et al.*

**Insurance company:** LIABILITY OF STOCKHOLDERS. Certain mortgages on real estate were executed by officers and stockholders to an insurance company in consideration of certificates of capital stock issued to the mortgagors. The mortgages contained a stipulation that they might be discharged in current funds or in the capital stock certificates issued to the mortgagors. The mortgages were not recorded, but they were included in the advertising circulars of the company and in the statements made of its condition, as constituting a principal part of its assets. *Held*, that a return and cancellation of the stock certificates and a surrender of the mortgages thereon, after losses have been incurred and the company has become insolvent, is a fraud upon policyholders, and as to them the mortgages will be regarded as still existing.

*Appeal from Winneshiek District Court.*

THURSDAY, JUNE 19.

ON the 21st of July, 1868, the plaintiffs filed in the Winneshiek district court a petition, stating in substance that the defendant, the N. W. Ins. Co. of Decorah, Iowa, was duly organized and incorporated under the laws of Iowa, and did, on the 19th day of September, 1867, at the city of Chicago, Illinois, insure the property of plaintiffs against loss or damage by fire, to the amount of $5,000 for the term of one year. That plaintiff's property was destroyed by fire to the amount of over $5,000, of which due proof was made and the same has not been paid, and that the company is insolvent.

That at the time of issuing said policy and during the time said company carried the risk, it was the owner of mortgages on real estate to the amount of over $50,000, among which were two executed by the defendant Combs upon property described, one for $4,000 and the other for $14,000.

That at the time the loss occurred Combs was a stockholder and president of the company, and that after the loss occurred with intent to defraud plaintiffs and other creditors, he and other officers of said company secreted said mortgages and other property of the company to such an extent that it is wholly unable to pay plaintiffs' claim. Plaintiffs ask a decree against the company for $5,000, and that Combs and the other defendants answer as to the disposition made of said mortgages and the other property of the company.

Afterward plaintiffs filed an amendment asking that defendants make a full disclosure of the condition of the company up to the time that it went into the hands of the receiver, and that a decree be entered against each of said defendants for the amount of any money, assets or property that may be found in their hands, that they be required to surrender to the receiver all notes, mortgages or other property of said company in their hands, and that plaintiffs have general relief.

VOL. XXXVI. — 80

At the March term, 1871, M. V. Burdick, the receiver, was on his own motion substituted as plaintiff, and filed his petition for the use of Burnham & Van Shaick, and the other creditors, and in addition to the averments of the petition and amended petition of Burnham & Van Shaick, stating in substance that he was appointed receiver of said company by the district court, in June, 1868; that its indebtedness amounts to $20,000; that prior to the execution of the mortgages by the defendant Combs, he executed and delivered to said insurance company his guarantee notes to the amount of $16,666.66, which formed a part of the capital stock of said company, and that in consideration of said mortgages these guarantee notes were surrendered to him, and were not replaced when the mortgages were taken away. The receiver admits the claim of Burnham & Van Shaick, and states that the available assets of the insurance company, at the time he was appointed, and which have come into his hands, do not exceed $1,000, and that he knows of no other assets except those taken away by defendant Combs and others, as alleged in the petition of Burnham & Van Shaick.

The receiver asks a decree against the defendant Combs as prayed for in the petition and amended petition, and that Combs may pay to him as receiver for the benefit of the creditors, $20,000, and for general relief.

None of the defendants answered but Combs. In this answer he denies generally the allegations in the petition and amended petition of Burnham & Van Shaick, so far as they charge him with secreting or permitting others to secrete any mortgage, note or property of said company. He denies that the debts of the company amount to $20,000, and that he ever executed his notes to the company for $16,666.66, as guarantee notes, and that he has taken and carried away any property of the company. He avers that the available assets in the receiver's hands are much more than $1,000; that the amount of premium notes in his hands is $30,000, and the amount of other securities $15,000.

Respecting the mortgages for $4,000 and for $14,000, he alleges that there was no consideration therefor, and that they were never stamped nor delivered. That there were some certificates of stock designed to be delivered which were never stamped nor delivered. That the said mortgages were to be delivered and the stock received upon condition that sufficient mortgages should be obtained to make up the amount of $150,000. So as to make statements in other States, and the mortgages were to be paid in N. W. Ins. Co. stock or money, at his option.

As to a certain $1,200 note executed by the company to him, defendant states that it has not been paid and is due him, the consideration being $400, by him paid, and the balance due him for services rendered the company, and that he held a deed to 240 acres of land, and a mortgage on 120 acres to secure said note. Many other allegations and answers thereto occur in the pleadings, which are not material to an understanding of the points decided below or here.

The court adjudged that upon payment by the receiver to Combs of $400 and interest thereon, Combs deliver to the receiver the lands held by him as security for said $1,200 note, and rendered judgment in favor of Combs upon the claim for the $18,000 in the mortgage mentioned.

Plaintiffs appeal.

*John T. Clark & Co.* and *G. W. Patterson* for the appellants.

*C. P. Brown, R. Noble* and *L. Bullis* for the appellee.

DAY, J.—The allegation of the defendant Combs that the two mortgages executed by him were merely for the purpose of enabling the company to make such statements as would allow it to do business in other States, is not sustained by the proof. Combs became a member of the company in the latter part of 1866 or the fore part of 1867, and was president of the company from June, 1867, until within a few weeks of the appointment of the receiver, which occurred in June, 1868.

On the 14th day of October, 1867, Combs and wife executed to the company the two mortgages described, the conditions of which are the same except as to amounts. The conditions of the smaller mortgage are as follows: "Provided, always, and these presents are upon this express condition, that, whereas, said Amos D. Combs has taken of the capital stock of the said N. W. Fire Insurance Company, the sum of four thousand dollars, and agrees to pay for the same the sum of four thousand dollars without interest, on or after ninety days from the date of this instrument, in current money or in capital stock certificates of the said North Western Fire Insurance Company. Now, if the said Amos D. Combs shall well and truly pay, or cause to be paid, the said sum of money or stock certificates above mentioned, and the interest thereon, according to the above rate of interest, then these presents to be null and void."

The real estate and stock register of the company contains entries of mortgages received by the company, showing a *total* on hand, Dec. 31, 1867, of $61,108.80. This sum includes the two mortgages executed by Combs, together amounting to $18,000.

The evidence shows that thirty-six certificates of the capital stock of said company, of $500 each, amounting in all to $18,000, were torn from the stubs.

The stubs contain the number of the certificates, the number of shares, to whom issued, the date, and to whom transferred, and attached to each of the thirty-six stubs is a receipt as follows: "Received this 19th day of Nov., 1867, A. D. Combs."

The thirty-six stock certificates are alike, except as to number, and are as follows:

"Shares $100 each. $500."

"The North Western Insurance Company, of Decorah, Iowa, for value, issues these shares of their capital stock in the sum of five hundred dollars, to Amos D. Combs, and the legal holder hereof shall share pro rata hereon, in the divi-

dends to be declared in this company annually, on the second Monday in July in each year. Transferable on the books of this company, in accordance with its by-laws and charter.

" In witness whereof the president and secretary have hereunto affixed their signatures and caused the corporate seal to be hereto attached, this 19th day of November, 1867.

"A. D. COMBS, *President.*
"A. Z. PUTNAM, *Secretary.*"

The date of Combs' receipt corresponds with the date of these certificates. By way of advertisement the company circulated cards of which the following is a copy: " The North Western Fire Insurance Company of Decorah. This company has a chartered capital of $300,000, of which a large portion is paid up and held by over fifty different persons, comprising some of the wealthiest men in the west, and has over $70,000 invested in first mortgages on real estate, besides large accumulations. Although a young company, it has received in premiums the sum of $106,000, and paid losses amounting to over $30,000, Last year it paid ten per cent dividends to stockholders, thus showing it to be a safe and profitable investment, as well as a reliable institution. Out of six thousand policies issued, three-fourths are on farm property, thus making it what we desire it to be, a farmers' company. By prompt payment of all losses, doing an honorable business and hard work, we intend to make the N. W. rank among the first insurance companies of the west.

" A. D. COMBS, *President.*
" A. Z. PUTNAM, *Secretary.*
" B. O. DAHLY, *Treasurer.*
" W. A. STOWELL, *Gen. Agent.*"

In this statement the mortgages executed by Combs do duty in making up the aggregage of " $70,000 invested in first mortgages on real estate." The book-keeper of the company, under the direction of the officers, prepared a semi-annual statement of the condition of the company, which was filed with the clerk of the district court of Winneshiek county, and published

Burnham & Van Shaick v. N. W. Ins. Co.

in the Decorah Republican, March 6, 1868, showing the condition of the company on the 31st of December, 1867, to be as follows:

| | |
|---|--:|
| "Notes in hands of agents and on hand | $22,079 20 |
| Cash on hand and in hands of agents | 7,128 29 |
| Personal property | 1,200 00 |
| Mortgages | 61,108 80 |
| Real estate | 5,000 00 |
| Interest due to date | 1,103 96 |
| Total assets | $97,620 25 |
| Total liabilities | $13,970 25" |

Here again the Combs' mortgages are pressed into service, for the book-keeper Stubbs, in answer to the question, "What mortgages composed the item of $61,108.80, above mentioned?" states: "One mortgage of A. D. Combs for $14,000 and another for $4,000, and other mortgages, the amounts of which I do not now remember."

From the testimony of Combs it appears that all of the mortgages making up the sum of $61,108.80 were of the same kind, "provisional," as he terms them, and not intended to be delivered unless sufficient was raised to make a statement in Minnesota. And yet, with the exception of his mortgage of $18,000, and one of Hays, who was a director of the company, for $10,000, they were all used in paying losses and securing borrowed money.

Briefly summed up the evidence shows the following facts: That in consideration of these mortgages, Combs received certificates of stock in the company for $18,000, upon which he was entitled to dividends and for which he executed his receipts. That these mortgages were included as a part of the available assets of the company, in the advertising circulars issued while Combs was president, and to which his name was attached. That they were included in the semi-annual statement of the company as part of its assets. That other mortgages executed

in the same way and upon the same considerations were used in paying the losses and securing the debts of the company. These facts are entirely irreconcilable with the theory that the mortgages were not delivered to and did not become the property of the company. Indeed, whatever private arrangement may have existed between Combs and the company of which he was president, having obtained credit for the company by publicly representing these mortgages as part of the available assets of the company, and a very considerable part, he is now, as against creditors of the company, estopped from denying that these mortgages belonged to the company. He cannot be allowed to advertise an impecunious corporation into public confidence, and, after it has thus been enabled to declare a dividend of ten per cent upon a fictitious capital of $300,000, assert that his advertisement was false, and leave the policy-holders who have paid the company, according to its own showing, $106,000 in premiums, without remedy for the $20,000 of losses sustained.

It appears from the evidence that during the time the company did business it received in premiums about $110,000, and that it sustained loans of about $50,000, of which it paid $30,000. The receiver was appointed in June, 1868. The principal property which came into his hands consists of premium notes, ranging in amount from $2.50 to $150, scattered through Iowa, Minnesota, Illinois and Kansas. Upon some of these the receiver has obtained judgment, but the cost of collecting has amounted to more than the sums collected, and they are regarded as worthless. The thirty-six certificates of stock issued to Combs have written across the face in red ink, without date, the word " canceled."

The stock certificate account is charged April 20, 1868, with $28,300 surrendered to Hays & Combs, and the mortgage account of the same date shows that the mortgages executed by Combs for $18,000, and one executed by Hays for $10,470, are released. The evidence shows that the consideration for this release was the return of the stock issued to them, and for which the mortgages were given.

So that, briefly summed up, we have this case: The president and a principal stockholder of a fire insurance company issue their mortgages to the company for over $28,000 and receive certificates of stock for a like amount. These mortgages are carried into the advertising cards and into the statements of the company as forming part of its available assets. Having issued six thousand policies, received $106,000 in premiums, declared a dividend of ten per cent on a chartered capital of $300,000, the stock is returned to the company, the mortgages are surrendered and released, and the affairs of the company go into the hands of a receiver to whom is bequeathed a debt of $20,000, to be paid in worthless premium notes.

At the same time the directors generously assign to their president a note of $1,200, secured by deed on 240 acres of land and a mortgage on 120 more, $400 of the consideration of which note was cash and the balance for services. It would bring just reproach upon the law if such subterfuges could be rendered availing. It is true these mortgages provide that they are payable in current money, or in capital stock certificates of the said company. But the return of the very certificates for which the mortgages were issued is in no just sense, under the circumstances of this case, a payment. It is rather a rescission of the contract, and a placing of each party in statu quo. Besides these mortgages were not recorded, and third persons had no means of knowing that they might be discharged in worthless stock of the company. They were carried into the statements of the company as valid subsisting securities, upon which they had a right to rely, and it would operate as a fraud upon policyholders to permit a construction to be placed upon and an effect to be given to these mortgages which would render them worthless. Whatever effect, therefore, may be given to the surrender of this stock as between the defendant Combs and the company, every principle of equity and fair dealing demands that as between Combs and the creditors of the company they be treated as still subsisting.

The policy of Burnham & Van Shaick was issued on the 19th of September, 1867, and these mortgages of Combs were

executed on the 14th of October, 1867. To the position that Burnham & Van Shaick can have sustained no injury, whatever may be the condition of these mortgages and however discharged, because their policy, issued before these mortgages were made, could not have been procured on the faith of them, the answer is this: At the time this policy was procured the assets of the company consisted of guarantee notes. It is clearly deducible from the testimony that these mortgages took the place of the guarantee notes, for the statement made in March, 1868, of the condition of the company on the 31st day of December, 1867, makes no mention of guarantee notes as comprising any part of the assets of the company, whilst it does include as the principal part of such assets $61,108.80 of mortgages.

Further, the insured had a right to surrender the policy and to have returned to them the unearned premium, and they probably would have done so if the cards issued by the company had shown that the guarantee notes had ceased to exist and that nothing supplied their place.

The objection that Burnham & Van Shaick cannot prosecute this action for the discovery of property until they have first established their claim at law, is without force inasmuch as the suit is now prosecuted by the receiver for the benefit of all the creditors, and the evidence shows the debts of the company to be at least $20,000.

The court erred, therefore, in rendering judgment in favor of defendant Combs upon the claim for the mortgages mentioned in the petition.

II. It is urged that the court erred in requiring the receiver to pay to Combs $400 and interest, on the note of $1,200 held by him. Combs testifies that this $400 was cash paid by him. The facts respecting it are not clearly disclosed in the evidence, and we are not able satisfactorily to determine from the record that, as to this, the judgment should be disturbed.

The cause is reversed and remanded to the district court with direction to enter a decree ordering the delivery to the receiver

for the use of the creditors of said insurance company, of the two mortgages executed by defendant Combs.

The plaintiff will have leave to amend his petition asking a foreclosure of the mortgages, if he shall be so advised.

Reversed.