## Osgood & Moss v. King.

1. **Corporations:** UNPAID SUBSCRIPTION: TRUST. Unpaid subscriptions to the capital stock of a corporation constitute a trust fund for the benefit of its creditors, and the officers of the corporation cannot, by any agreement or arrangement with the stockholders, release them from the obligation of payment, to the prejudice of creditors.

2. ———: ———: FRAUD. The officers of a corporation are chargeable with fraud if they shall receive in payment for stock property at a valuation known to be in excess of its real value, and thereon shall issue paid up certificates of stock.

3. ———: ———: NOTICE. The record of a deed of real estate to a corporation, reciting that the consideration is a certain number of paid up shares of the stock, does not constitute constructive notice to creditors that the stock subscriptions have been paid.

*Appeal from Wapello Circuit Court.*

## FRIDAY, MARCH 24.

THE plaintiffs filed their petition alleging that, as a co-partnership, on the 10th day of March, 1874, they obtained a judgment for one thousand and twenty-one dollars against the National Coal and Mining Company, and caused execution to be issued thereon on the 7th day of October, 1874; that the sheriff, not finding any property belonging to said National Coal and Mining Company on which to levy, requested C. C. Blake, last acting president of said company, to point out property belonging to said company on which said execution could be levied, and Blake failed to point out any such property. That on or about the 18th day of October, 1871, said company was incorporated under the general incorporation laws of the State of Iowa; that J. O. Briscoe, T. J. Zollars, C. C. Blake, and defendant, Wm. M. King, were the only parties who signed the articles of incorporation of said company as incorporators; that by said articles it was provided that all of said last named parties, Briscoe, Zollars, Blake and defendant, should be directors of said company, and that Blake should be president, Zollars vice president and treasurer, Briscoe secre-

tary, and defendant superintendent. That on the 25th day of October, 1871, while all of said parties held said offices as aforesaid, and before any other party had any interest whatever in said company, said Zollars, Blake, Briscoe and King jointly deeded to said company the coal underlying about eleven hundred acres of land in said county, the consideration for said conveyance being 1900 shares of the capital stock of said company, and was so expressed in said deed, which was properly acknowledged and recorded in said county on October 26, 1871. That the capital stock of said company was fixed by the articles of incorporation at $200,000, divided into shares of $100 each, and said articles further provided that said stock shall be paid in at such times and in such sums as the board of directors may hereafter by resolution determine. Plaintiffs further show that on the 4th day of November, 1871, said Zollars, Blake, Briscoe and defendant, while they were all officers as above set out, and while they were the only officers, only stockholders and only persons interested in said company, issued to themselves certificates for 1900 paid up shares in said company, in consideration of said conveyance, as follows: To said Zollars, 561; Blake, 352; Briscoe, 352; and to said defendant, 635 shares; that said company received said conveyance in full payment of the par value of said shares. Plaintiffs further show that at the time of said conveyance, and the issuance of said certificates, said land would not have sold for and was not worth more than $25 per acre, and that said Zollars, Blake, Briscoe and defendant well knew and considered that said land was not worth more than $25 per acre. That none of said parties ever paid a cent to said company on said 1900 shares, or any of them, except as aforesaid. So that plaintiffs aver that the amount actually paid in by said parties on their said 1900 shares is not more than $27,500 as the value of said coal under said 1100 acres at $25 per acre, said payment of $27,500 on said 1900 shares being about $14 per share, each of said parties paying by said conveyance the same amount per share on the shares issued to them, and that there is an unpaid balance of $86 per share on said 1900 shares. That prior to the time that the debt on which plaintiffs obtained said judgment

was contracted, said defendant had transferred his said 635 shares in said company; but that on the 4th day of November, 1871, said Zollars transferred 95 of his said 561 shares to Peter Knox and Leonard Knox, and that new certificates for said shares were issued to said Knoxes by said company for said 95 shares, and that on the 19th day of March, 1872, said King, defendant, purchased said 95 shares of said Knoxes, and new certificates for said 95 shares were issued to said King by said company, and that King now owns 60 of said 95 shares and holds the certificates therefor in his own name, and has so owned and held said 60 shares ever since he purchased them in March, 1872. Plaintiffs further show that there has never anything been paid to said company on said 60 shares except what was paid by the conveyance of said coal land as aforesaid, and that there is an unpaid balance of $86 per share, or $5160 unpaid on said 60 shares of defendant, and that when defendant purchased said 60 shares of said Knoxes, he well knew that nothing, except as aforesaid, had been paid in on said shares. That when plaintiffs' debt was contracted with said company, to-wit, in the fall and winter of 1873 and 1874, neither of said firm of Osgood & Moss knew or had heard what was paid in on said 60 shares, and neither of them knew or had heard that said company had agreed to receive said coal land in full payment, or part payment, for said 1900 shares, nor did either of them know of the execution or recording of the aforesaid deed. Plaintiffs further show that there has never been anything in the articles of incorporation of said company, or in the by-laws or in the notice required by law to be published, stating that the stock had been or could be paid up with anything else than money; that the notice published at the time of the organization of said company, as provided by law, was in words and figures following, to-wit: "The capital stock of this corporation shall be $200,000, divided into shares of $100 each, which shall be paid in at such times and in such sums as the board of directors may hereafter by resolution determine. That plaintiffs, or either of them, did not prior to the time their debt was contracted see, hear of or know of any paper, notice or record of said company, stating that any

Osgood & Moss v. King.

part of said stock was or could be paid up by the conveyance of said land. Plaintiffs ask for judgment against defendant, King, for one thousand and twenty-one dollars, with interest and costs.

The defendant demurred to the petition for the reason that the facts stated are not sufficient to constitute a cause of action, and do not entitle plaintiffs to the relief demanded, in this:

"1. Plaintiffs show affirmatively that the stock was fully paid up stock.

"2. That said company and its stockholders treated its stock as fully paid up, and that all the contracts between said company and its stockholders, as to the payment for their stock, have been fully executed and discharged; and do not show that any of said contracts are void or voidable for fraud, or that any fraud has been practiced upon plaintiffs by said defendant or said company.

"3. That plaintiffs had constructive knowledge at the time that said debt was contracted, that said stock was fully paid up, and the time and manner in which it was paid up.

"4. Plaintiffs do not show that they have been deceived or misled in any manner by this defendant or by said company."

The court sustained this demurrer and, the plaintiffs declining to amend, rendered judgment against plaintiffs for costs. Plaintiffs appeal.

· O. M. Ladd, for appellants.

The capital stock of a corporation, and especially its unpaid subscriptions, are a trust fund for the benefit of the general creditors of the corporation. (Sawyer v. Hoag, 17 Wall., 610.) The governing offices of a corporation cannot, by agreement or other transaction with the stockholder, release the latter from his obligation to pay, to the prejudice of its creditors, except by honest and fair dealing. (Burke v. Smith, 16 Wall., 390; New Albany v. Burke, 11 Id., 96.) Every arrangement made by the directors looking to the release of a stockholder from his subscription, or to any action by which the creditors shall

lose any of the benefit thereof, will be regarded in equity, not merely as *ultra vires*, but as a fraud upon the creditors. (*Burke v. Smith, supra.*)

*Stiles & Burton* and *C. C. Blake*, for appellee.

DAY, J.—I. This action is brought, under section 1084 of the Code, to charge a stockholder with the payment of a judgment rendered for a corporate debt. Section 1082 of the Code, which is substantially the same as section 1172 of the Revision, is as follows:

"Neither anything in this chapter contained, nor any provisions in the articles of incorporation, shall exempt the stockholders from individual liability to the amount of the unpaid installments of the stock owned by them, or transferred by them for the purpose of defrauding creditors, and execution against the company may, to that extent, be levied upon the private property of any such individual."

The petition in substance alleges that the defendant and three others, the stockholders, officers, and sole incorporators of the National Coal and Mining Company, representing and constituting said company, made an arrangement with themselves as stockholders, whereby eleven hundred acres of land, which they knew and understood to be worth no more than $27,500, were conveyed to the company and accepted by it, in full payment of 1900 shares of the capital stock of the company, at $100 each, or $190,000; and that, in consideration of such conveyance, they issued to themselves certificates for 1900 paid up shares in the capital stock of the company.

That the company, as between itself and the stockholders, had the right to take payment of stock in anything it saw fit, may be admitted. But quite a different question arises when the rights of creditors of the corporation are involved. The unpaid subscriptions to the capital stock of a corporation are a trust fund for its general creditors.

1. CORPORA-TION: unpaid subscription: trust.

The officers of a corporation cannot, by agreement or arrangement with the stockholder, release him, to the prejudice of

creditors, from his obligation to pay his subscription, unless the transaction is characterized by the utmost fairness. The law makes a stockholder liable to a creditor to the extent of the unpaid installments on the stock owned by him. The intention of the law is, that property, or a fund, equal to the capital stock of the company, or so much of it as the articles of incorporation require to be subscribed previous to commencing business, shall in fact exist and be subject to the debts of the corporation.

When a corporation, as did the one in question, advertises that its capital stock is $200,000, divided into shares of $100, to be paid in at such times and in such sums as the board of directors may determine, third persons dealing with it have a right to expect and to demand that $200,000 have been or will be in good faith paid into its capital stock in property or money, so as to become liable for its obligations.

It is a gross fraud for the officers of such a corporation to issue to stockholders paid up certificates of stock, in consideration of real estate conveyed at a price known and understood to be many times its real value. But such a fraud is greatly intensified when the officers of a corporation deal with themselves as stockholders, and accept such a conveyance in payment of their own stock.

2. ___ : ___ .
fraud.

Under such circumstances every principle of honesty and justice requires that, as between the stockholder and a creditor, the stock shall be considered paid only to the extent of the fair value of the property conveyed; and that, for the balance, the stockholder shall be held individually liable, in the event of his failure to point out corporate property, subject to levy. Under no other construction can the rights of innocent persons be protected, and laudable enterprises be, at the same time, fostered and encouraged. It would be a reproach to the law if the officers of a corporation could be permitted to advertise its capital stock at a large amount, and then, by a mere arrangement between themselves and the stockholders, accept payment in property of a merely nominal value, and, without incurring individual liability upon themselves or the

stockholders, make the stock in fact one-seventh, or one-tenth, or one-twentieth the amount advertised.

The case of *Burnham & Van Shaick v. N. W. Ins. Co.*, 36 Iowa, 632, is strongly in point. See, also, *Sawyer v. Hoag*, 17 Wall., 610. The foregoing view disposes of the first, second and fourth points of the demurrer.

II. The only remaining point presented by the demurrer is, that plaintiffs had constructive knowledge, at the time the debt was contracted, that the stock was fully paid up, and the time and manner of payment.

3 ——: ——:
notice.

The petition alleges that the consideration for the deed was expressed in it, and that it was recorded October 26, 1871.

The record of this deed would be constructive notice to a subsequent purchaser from the grantors, that there had been a prior conveyance. But certainly it could be no constructive notice to a person proposing to trust a corporation, that the capital stock had been paid by the conveyance of a certain amount of land. No one would think of looking at the records for such a purpose, nor does the law require one to do so. The demurrer, we think, should have been overruled.

REVERSED.