| 90 | 473 |
| 119 | 101 |

HENRY B. ALLEN AND P. J. SIEBERLING, Appellants, v. THE WISCONSIN, IOWA & NEBRASKA RAILWAY COMPANY; THE CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY, A. B. STICKNEY, GEORGE GLICK, J. M. PARKER, A. T. BURCHARD, J. M. BURCH AND M. C. WOODRUFF, Defendants and Appellees, v. R. T. WILSON AND R. T. WILSON & COMPANY *et al.*, Defendants.

Limitation of Actions: Declaring Fraudulent Issue of Stock Void. Certain taxpayers in B. county became entitled to stock in a railroad under Acts of the Twentieth General Assembly, chapter 159. They claim that defendants entered into a conspiracy to render said stock valueless by fraudulently issuing other stocks and bonds which latter were secured by a mortgage recorded in said county. *Held*, that the recording was a discovery of the alleged fraud within Code, 2529, subdivision 4, or, at least, put upon inquiry concerning it, and that an action brought seven years thereafter was barred. *Wicke v. The Insurance Co.*, 57 N. W. Rep. 632, *distinguished*.

*Appeal from Blackhawk District Court.*—HON. J. D.
LENEHAN, Judge.

THURSDAY FEBRUARY 8, 1894.

PROCEEDING in equity to establish plaintiffs' right
to certain assets converted by defendants, and for the
cancellation of certain stock and bonds, and for dam-
ages, and other equitable relief. Decree below for
defendants, and dismissing plaintiffs' bill at their costs,
from which this appeal is prosecuted.—*Affirmed.*

*C. C. & C. L. Nourse* and *W. M. Jones* for appel-
lants.

*N. M. Hubbard* and *O. C. Miller* for appellees.

KINNE, J.—I. The pleadings in this case are vol-
uminous. We shall endeavor to state, as concisely as
possible, the substance of the matters in controversy,
in so far as the same are material to a proper under-
standing and determination of the case. The plaintiffs
are taxpayers and the holders of forty-five thousand
dollars of certificates issued by the treasurer of Black-
hawk county, Iowa, in pursuance of the provisions of
chapter 159 of the Acts of the Twentieth General Assem-
bly of this state, on account of taxes voted and paid to
aid in the construction of the Wisconsin, Iowa & Ne-
braska Railroad in Blackhawk county. In March, 1881,
several citizens of the cities of Marshalltown, Waterloo,
and Des Moines held a meeting at the last named place,
and effected an organization for the purpose of building
a railroad which should pass through the three cities
named, and from a point at or near McGregor, Iowa,
southwesterly across the state, to some point on the Mis-
souri river, in Fremont county. Glick and Parker, two of
the answering defendants herein, were at that time
elected president and secretary, respectively, of said com-

pany, and served in that capacity until about September, 1884. This company was known as the Wisconsin, Iowa & Nebraska Railway Company. Its articles of incorporation were not filed with the secretary of state until March, 1882. Efforts had been made, as far back as 1870, to build a road on substantially the same route as that afterward used by this company, but they were unsuccessful. A few shares of stock were subscribed by the promoters of this enterprise at the time of their organization in 1882, and thereafter some twenty-five shares of stock were subscribed and paid for by parties residing along the proposed line of road. It does not appear, however, that this stock was ever voted at the stockholder's meetings. It was not expected that the company thus organized would itself build the road, but the organization was effected for the purpose of securing capital with which the road might be constructed. After the completion of the organization, the officers of the company made diligent efforts to induce capitalists to interest themselves in the enterprise. The directors of the corporation voted and issued to themselves, for services, one thousand dollars each in stock, except that one thousand, five hundred dollars was voted to and received by Parker. In 1882 the company entered into a contract with Griswold, Harper & Field to build the entire road. Soon after, it became apparent that these men could not raise the money to carry out their contract. In July, 1882, Parker went to New York, and, the above named parties, and others, having formed the Iowa Improvement Company under the laws of New Jersey, with a capital of twenty thousand dollars, Griswold, Harper & Field canceled their contract, and a new contract was entered into between the railway company and the improvement company for the construction of the road. By this contract the improvement company undertook to build and equip the railroad, and to furnish the right of way for the

three hundred and twenty-five miles, in consideration of the receipt by them of sixty thousand dollars per miles, as follows: First mortgage bonds, twenty thousand dollars; second mortgage bonds, twenty thousand dollars; and stock of the railway company, twenty thousand dollars; and, in addition. thereto, all subscriptions, donations, local aid, and other sums they might obtain from individuals, counties, towns, cities, or other corporations along the line. Under this contract, work was prosecuted on the line, and a large part of the right of way secured between Cedar Falls, and Waterloo and Des Moines, and considerable money expended in the construction of the road. Afterward this contract was so changed as to provide for the issuing of twenty-four thousand dollars per mile of first mortgage bonds drawing five per cent. interest, instead of twenty thousand dollars drawing six per cent. interest. It seems that directors Glick and Parker, who had spent much time and money in furthering the interests of the enterprise, were, by agreement of the improvement company, to receive one hundred thousand dollars each of the stock which was contracted to be delivered to said improvement company. This stock was, in fact, issued to them, but, at the instance of Wilson, was afterward returned. In September, 1882, Griswold borrowed of R. T. Wilson & Company, of New York, thirty-four thousand dollars, with which to pay an estimate on the Wisconsin, Iowa & Nebraska Railway Company construction, and pledged stock of the improvement company to secure the loan. In October, 1882, Griswold and the improvement company being unable to repay the loan, a modification of the previous contract with the railroad company was made, whereby it was incumbent upon the improvement company to build only that part of the road between Waterloo and Marshalltown, and the construction of other parts of the road remained optional with them. Wilson & Com-

pany were at this time appointed financial agents of both the railroad and improvement companies, with power to sell all bonds, mortgages, and other securities called for by the agreement.

During the same month, it appearing that the bonds could not be sold, and that Wilson & Company would be compelled to furnish the money to build the road, if it was to be built, a contract was made between Wilson & Company and the improvement company which, in effect, substituted Wilson & Company in the construction of the road in the place of the improvement company, and it was then further provided that the improvement company should pay Wilson & Company, for their services in building the road, one thousand dollars per mile, which was to be paid out of the first subsidies received by the improvement company, and, if they were not sufficient, then from its other means. Under this agreement Wilson & Company furnished the money and completed the road from Cedar Falls and Waterloo through Marshalltown to Des Moines in December, 1884, in all about one hundred and fifteen miles of road. Wilson & Company in the name of the Iowa Improvement Company, operated the road from the time of its completion until its sale to the Chicago, St. Paul & Kansas City Railway Company, in June, 1886. January 1, 1883, the Wisconsin, Iowa & Nebraska Railway Company executed a mortgage upon the road for two million, seven hundred and fifty-two thousand dollars, being an amount in excess of twenty-four thousand dollars per mile of said road, and on January 2, 1883, they executed a second mortgage thereon for two million, three hundred thousand dollars, being an incumbrance of twenty thousand dollars per mile, and said mortgages were filed for record January 2, 1883, in Blackhawk county, Iowa. In addition to this, the railway company issued to Wilson & Company stock to the amount of twenty thousand

dollars per mile. November 12, 1883, and June 2, 1884, respectively, the taxes in question were voted in Cedar Falls and Waterloo townships, Blackhawk county, and matured in installments in March and September, 1885 and 1886, and were received by the railway company, and by them paid to Wilson & Company. May 26, 1886, the defendant the Chicago, St. Paul & Kansas City Railway Company was organized. June 3, 1886, a contract was entered into between Wilson & Company and this railway company, whereby the former sold the road, with all the bonds and stock held by Wilson & Company, for the consideration of two million, three hundred thousand dollars first mortgage bonds of the Chicago, St. Paul & Kansas City Railway Company, and the further sum of two million, seven hundred and fifty-two thousand dollars of the stock of the latter company. Proper conveyances were made in consummation of this sale. It is claimed that the road, prior to this sale, had earned more than expenses and taxes, but from all of the evidence it appears that the road had never earned enough to pay its operating expenses, taxes, and the interest on its first mortgage bonds. It is charged that Wilson & Company and Stickney and others, for the purpose of cheating and defrauding those who might be entitled to stock, issued to various persons large amounts of stock of the Chicago, St. Paul & Kansas City Railway Company, without consideration, and fraudulently issued to themselves such stock as paid up stock, without any consideration, and that same was put upon the market, and has passed into the hands of third persons, and that by reason thereof the stock of said company is worthless; that under its articles of incorporation the Chicago, St. Paul & Kansas City railway company has purchased other railroads, thereby increasing its indebtedness, so that it has not been able to meet the accruing interest on its debt, and by reason thereof its stock has no market value. The

relief prayed for is that the issue of two million dollars
of stock of the Wisconsin, Iowa & Nebraska Railway
Company to Wilson & Company, and the issue of
stock, without consideration, of the Chicago, St. Paul
& Kansas City Railway Company, be decreed fraudu-
lent and void, and any stock issued in lieu of said two
million dollars of stock be declared plaintiff's property;
and that, as against the defendants having notice of
the frauds charged, all bonds of both railway companies
be declared void, and all bonds issued in lieu of other
bonds by the Chicago, St. Paul & Kansas City Railway
Company in defendants' hands be declared assets of
plaintiffs, and that plaintiffs have judgment for dam-
ages.   The answer denies all allegations of fraud, and
and pleads:   *First*, that the taxpayers of Waterloo and
Cedar Falls townships have waived any right of action
they may have had, because the work of construction
proceeded upon the faith of and relying upon said
taxes, and no suit was begun until after the road was
completed, and for the further reason that the taxpay-
ers had full knowledge of the issuing of the bonds prior
to the payment of any of the taxes; *second*, that the
cause of action, if any ever existed, is barred by the
statute of limitations.   Before plaintiffs filed their
amended petition, the answering defendants filed a
written tender and offer to cause to be issued by the
proper officers of either railway company the capital
stock of either to the plaintiffs for the full amount of
the tax certificates for local aid taxes claimed in the
petition.   This proposition still stands in the case.   The
court below, at the conclusion of the trial, entered a
decree dismissing plaintiffs' bill at their costs.

II.   The *gravamen* of plaintiffs' bill is fraud, alleged
to have been practiced by the officers and stockholders
of the defendant railway companies and others, whereby
the stock to which plaintiffs and their assignors would
be entitled was rendered valueless.   The defense is that

there was no fraud, and, if there was, plaintiffs and their assignors were not damaged; that plaintiffs and their assignors have waived any fraud or illegality, and that this action is barred. We shall not enter into an extended discussion of the testimony touching this question of fraud. We may, however, profitably refer to some of the facts most relied upon by plaintiffs as sustaining the allegations of their bill. It must be conceded that the primary, and, we think, sole, object of the defendants who were promoters of the Wisconsin, Iowa & Nebraska Railway was to secure for the cities in which they lived the benefits that might be expected to flow from another, and presumably competing, line of railway. If it be admitted that in their zeal to accomplish that object they did not act wisely in entering into the contracts and arrangements hereafter referred to, still there is no sufficient evidence showing that their acts in entering into contracts for the construction of the road were the result of bad faith or fraudulent intent. Indeed, when these contracts were made, and the bonds and stock complained of issued, by the Wisconsin, Iowa & Nebraska Railway Company, it does not appear that its officers and directors fraudulently intended to divert any tax that might be voted in aid of the construction of the road to an improper purpose, and thereby to defraud subsequent taxpayers. As is well said by the learned trial judge: "The evidence fails to show any tangible connection between the contract alleged to be fraudulent and the purpose thereby to defraud taxpayers who had not then voted to aid in the building of the railway, and when it could not have been known that they would do so." These acts in issuing the bonds and stock complained of were only resorted to when, after several trials, it had become apparent that without a resort to such measures the road could not be built. The railway company was without money. It was, if its enterprise was to succeed, at the mercy of capitalists. Its officers

were in no position to dictate terms to those from whom they sought and must have aid. It appears that the contract they entered into for the construction of the road was not made with any fraudulent intent, or with any such purpose in view, but as a necessity growing out of their pecuniary condition, and with a view of bringing the enterprise to a successful completion. Now, it is insisted that the issuing of twenty thousand dollar stock per mile was a fraud upon the plaintiffs, and that the directors and officers of the railway should be held liable therefor to plaintiffs. Plaintiffs ground their claim upon the decisions of this and other courts which hold that unpaid subscriptions to the capital stock of a corporation are a trust fund, and that it is a fraud for officers of a corporation to issue paid up certificates of stock upon a grossly insufficient consideration, or upon no consideration whatever. *Osgood v. King,* 42 Iowa, 483; *Jackson v. Traer,* 64 Iowa, 479, 20 N. W. Rep. 764; *Oliphant v. Mining Co.,* 63 Iowa, 333, 19 N. W. Rep. 212. As for another cause this case must be affirmed, we are not called upon to determine whether such an issue of stock, which was of no value, would be such a fraud upon plaintiffs as to entitle them to damages. As bearing upon this question, see *Fogg v. Blair,* 139 U. S. 118, 11 Sup. Ct. 476.

III. The acts claimed to constitute the fraud, mostly relied upon, consist in the issuing of stock and bonds by the officers of the Wisconsin, Iowa & Nebraska Railway Company to the amount of sixty thousand dollars per mile. Now, if it be conceded that these acts were in fact not known to the plaintiffs or their assignors when done, they were, in law, known to them in January, 1883, when the mortgages securing the forty-four thousand dollars of bonds per mile were placed upon the record in Blackhawk county, Iowa. That was more than five years prior to the bringing of this suit. We think this action is barred. The claimed

concealment of the fraud, if any, has not been established. No effort was made by these plaintiffs or their assignors to ascertain by actual examination of the books of the Wisconsin, Iowa & Nebraska Railway Company or otherwise if any fraud had been practiced upon them. The illegal acts complained of in issuing the stock and bonds occurred July 21, 1882, and, under the law, they were made manifest when the mortgages —the very instruments which were a part of the transaction, and which were made in consummation of the claimed fraud—were placed upon record in the county of plaintiffs' residence. The taxes had not then been voted. With full knowledge of the record of these mortgages, of the fraud, if any, the assignors of plaintiffs voted and paid these taxes. They saw the road built; they made no complaint; they took no steps to assert their rights; and under the law as laid down in *Walker v. Birchard*, 82 Iowa, 391, 48 N. W. Rep. 71, they could not avail themselves at this late day of the statute making the directors liable for issuing bonds in excess of the statute limit. We speak of these matters, also, to show that there are no persuasive equities existing in plaintiffs' favor. Furthermore, plaintiff Allen knew of the sale of the Wisconsin, Iowa & Nebraska Railway Company to the Chicago, St. Paul & Kansas City Railway Company, and at that time not all the taxes in controversy had been paid. The certificates sued upon were issued long after this sale, and still later Allen became the purchaser of them at from five to ten cents on the dollar of their face value. As we have said, the action is barred. The suit was commenced in April, 1890. The fraud, if any, was revealed in January, 1883, when the mortgages were recorded. *Laird v. Kilbourne*, 70 Iowa, 86 30 N. W. Rep. 9, and cases cited. See, also, *Gillespie v. Cooper*, 55 N. W. Rep. (Neb.) 302. This case, so far as this record notice is concerned, is clearly distinguish-

able from *Wicke v. Insurance Co.*, 90 Iowa, 4, 57 N. W. Rep. 632 (decided at this term.) In that case defendant acquired no interest in the mortgaged property by purchase or incumbrance, while in the case at bar plaintiffs' assignors, when they paid the taxes, were entitled to become stockholders in the railroad company, and, therefore, part owners of the property. This action is brought under subdivision 4 of section 2529 of the Code, which provides that all actions for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and those founded on unwritten contracts, etc., shall be barred, unless brought within five years after the cause of action accrues. If for fraud or fraudulent concealment, the statute begins to run from the time of the discovery of the fraud, or when, by the use of due diligence, it might have been discovered. It is averred that the fraud was not known to the taxpayers at the time the taxes were voted, and that it remained undiscovered until about the time this suit was commenced. We do not think this allegation is sustained by the evidence. There is nothing to show that the defendants did anything to conceal or cover up the fraud, if any was practiced. There is nothing to show that by the exercise of due diligence plaintiffs and their assignors could not have discovered the alleged fraud within five years of the time of its perpetration. The means of knowledge of the alleged frauds, so far as plaintiffs or their assignors were concerned, were at all times within their reach, if they had sought to avail themselves of them. But, however this may be, it is clear that when the mortgages were filed they had record notice of the alleged frauds, at least sufficient to put them upon inquiry, but they made no attempt whatever to discover their cause of action. In any view, the statute had run long before this action was commenced. The judgment below must be AFFIRMED.